## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

        Plaintiff,

       v.

YOEL SCHWARZ AND ERNEST SCHWARZ AS
TRUSTEES OF THE VALERIA SCHWARZ
IRREVOCABLE LIFE INSURANCE TRUST,

        Defendants.

Case No. 3:09-cv-03361(FLW)(TJB)

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**DRINKER BIDDLE & REATH LLP**

James S. Bainbridge
Lawrence R. Scheetz, Jr.
500 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Fax: (973) 360-9831
james.bainbridge@dbr.com
lawrence.scheetz@dbr.com

*Attorneys for Plaintiff*
*The Lincoln National Life Insurance*
*Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ..................................................................................... 2

    A.    Issuance of the Policies.......................................................................... 3

    B.    Death and Claim Investigation.............................................................. 4

    C.    Misrepresentations Regarding Ms. Schwarz's Finances ...................... 5

I.      BACKGROUND ........................................................................................ 6

II.     STANDARD ON A MOTION TO DISMISS ........................................... 8

III.    CHOICE OF LAW .................................................................................... 9

IV.   THE POLICY REMAINS CONTESTABLE BY LINCOLN......................... 13

    A.    Public Policy and Law Preclude "Wagering Contracts" ...................... 15

    B.    Incontestability Provisions Do Not Apply to Wagering Contracts that Are Void *Ab Initio* ..................................................................... 16

    C.    This Court Should Follow the Majority Rule and Reject the Trust's Argument on Incontestability ............................................................ 19

V.     LINCOLN FAILED TO PLEAD FRAUD WITH PARTICULARITY ......................... 26

VI.   THE POLICIES LACK AN INSURABLE INTEREST ................................ 30

    A.    The Trust Does Not Have an Insurable Interest in the Life of Ms. Schwarz....... 30

    B.    Ms. Schwarz Was Not the Party Who Procured the Policy and Therefore She Had No Insurable Interest to Assign............................................. 33

VII.  LINCOLN FAILED TO PROPERLY PLEAD THAT JURISDICTION RESTS WITH THIS COURT........................................................................... 34

CONCLUSION....................................................................................................... 37

## TABLE OF AUTHORITIES

### CASES

*2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC,*
   2009 WL 2222935 (S.D.N.Y. July 27, 2009) ............................................................... 12

*Allianz Life Ins. Co. of N. Am. v. Estate of Bleich,*
   2008 U.S. Dist. LEXIS 90720 (D.N.J. Nov. 6, 2008) .................................................... 13

*American General Life Ins. Co. v. Altman Family Ins. Trust ex rel. Altman,*
   2009 WL 5214027 (D.N.J. Dec. 22, 2009) ....................................................... 27, 28, 30

*American General Life Ins. Co. v. Ellman Savings Irrevocable Trust,*
   No. 08-cv-03489 (D.N.J. 2008) ............................................................................... 9,10

*American General Life Ins. Co. v. Ellman Savings Irrevocable Trust,*
   No. 08-cv-05364 (D.N.J. 2008) ...................................................................................... 35

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ..................................................................................................... 9

*Atkinson v. Wal-Mart Stores, Inc.,*
   2009 WL 1458020 (M.D. Fla. May 26, 2009) ............................................................. 20

*Beard v. Am. Agency Life Ins. Co.,*
   550 A.2d 677 (Md. 1988) ........................................................................................ 17, 18

*Beasley v. Missouri State Life Ins. Co.,*
   179 S.E. 777 (S.C. 1935) ............................................................................................... 14

*Bell Atlantic Corporation v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................................... 8

*Bernier v. Pacific Mut. Life Ins. Co. of Cal.,*
   139 So. 629 (La. 1932) ................................................................................................... 14

*Boyson, Inc. v. Archer & Greiner, P.C.,*
   705 A.2d 1252 (N.J. Super. Ct. App. Div. 1998) .......................................................... 11

*Brett v. Warnick,*
   75 P. 1061 (Or. 1904) .................................................................................................... 20

*Bromley's Adm'r v. Washington Life Ins. Co.,*
   92 S.W. 17 (Ky. 1906) ............................................................................................ 17, 20

*Brown v. Mass. Casualty Ins. Co.*,
    1995 U.S. App. LEXIS 23779 (9th Cir. Aug. 8, 1995) ...............................17

*Buckner v. Ridgely Protective Ass'n*,
    229 P. 313 (Wash. 1924)...........................................................................21

*Buzzone v. Hartford Accident & Indem. Co.*,
    129 A.2d 561 (N.J. 1957)..........................................................................12

*Carter v. Cont'l Life Ins. Co.*,
    115 F.2d 947 (D.C. Cir. 1940) ..................................................................19

*Chamberlain v. Butler*,
    86 N.W. 481 (Neb. 1901)..........................................................................20

*Charbonnier v. Chicago Nat'l Life Ins. Co.*,
    266 Ill. App. 412 (1932) ...........................................................................19

*Commonwealth Life Ins. Co. v. George*,
    28 So. 2d 910 (Ala. 1947)...................................................................14, 19

*Conley v. Gibson*,
    355 U.S. 41 (1957)..................................................................................8, 9

*Crismond's Adm'x v. Jones*,
    83 S.E. 1045 (Va. 1915)............................................................................21

*Cronin v. Vermont Life Ins. Co.*,
    40 A. 497 (R.I. 1898) ...............................................................................21

*D'Aiuto v. City of Jersey City*,
    2007 U.S. Dist. LEXIS 57646 (D.N.J. Aug. 8, 2007)..................................9

*Farmers Butter and Dairy Co-op. v. Farm Bureau Mut. Ins. Co.*,
    196 N.W.2d 533 (Iowa 1972) ...................................................................20

*Fire Ass'n of Philadelphia v. Ward*,
    42 S.E.2d 713 (W. Va. 1947).....................................................................21

*First Colonial Ins. Co. v. Custom Flooring, Inc.*,
    2007 WL 1175759 (D.N.J. April 17, 2007)...............................................34

*Fuller v. Metropolitan Life Ins. Co. of N.Y.*,
    41 A. 4 (Conn. 1898) ...............................................................................20

*Gantes v. Kason Corp.*,
    679 A.2d 106 (N.J. 1996) ..................................................................................11

*General Ceramics Inc. v. Firemen's Fund Ins. Co.*,
    66 F.3d 647 (3d Cir. 1995) ...............................................................................11

*Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n. Ins. Co.*,
    629 A.2d 885 (N.J. 1993) ..................................................................................11

*Goodwin v. Fed. Mut. Ins. Co.*,
    180 So. 662 (La. Ct. App. 1938) .......................................................................19

*Grigsby v. Russell*,
    222 U.S. 149 (1911) ..........................................................................................14

*Guarantee Trust Life Ins. Co. v. Wood*,
    631 F. Supp. 15 (N.D. Ga. 1984) ......................................................................18

*Harris v. Sovereign Camp*,
    1940 WL 2917 (Ohio Ct. App. Feb. 19, 1940) .................................................20

*Hebela v. Healthcare Ins. Co.*,
    370 N.J. Super. 260 (App. Div. 2004) ..............................................................21

*Henderson v. Life Ins. Co. of Va.*,
    179 S.E. 680 (S.C. 1935) ..................................................................................20

*Hilliard v. Jacobs*,
    874 N.E.2d 1060 (Ind. Ct. App. 2007) .............................................................20

*Home Life Ins. Co. v. Masterson*,
    21 S.W.2d 414 (Ark. 1929) ........................................................................14, 19

*Ill. State Bar Assoc. Mutual Ins. Co. v. Coregis Ins. Co.*,
    821 N.E.2d 706 (Ill. App. Ct. 2004) .................................................................16

*Interested Underwriters at Lloyd's v H.D.I. III Assoc.*,
    623 N.Y.S.2d 871 (N.Y. App. Div. 1995) ........................................................25

*Jaworowski v. Guerin*,
    2008 WL 2219934 (N.J. Super. App. Div. May 30, 2008) ..............................12

*John Hancock Life Ins. Co. v. Rubenstein*,
    No. 09-21741-CIV-UNGARO (S.D. Fla. Sept. 1, 2009) ..................................19

*Kentucky Cent. Life Ins. Co. v. McNabb,*
  825 F. Supp. 269 (D. Kan. 1993)................................................................19

*Kievit v. Loyal Protective Life Ins. Co.,*
  170 A.2d 22 (N.J. 1961)...........................................................................12

*Kramer v. Lockwood Pension Servs., Inc.,*
  2009 U.S. Dist. LEXIS 85285 (S.D.N.Y. Sept. 1, 2009)............................23

*Ledley v. William Penn Life Insurance Co.,*
  651 A.2d 92 (N.J. 1995)...............................................10, 24, 25, 26, 27

*Life Product Clearing, LLC v. Angel,*
  530 F. Supp. 2d 646 (S.D.N.Y. 2008)......................................................7, 33

*Lincoln National Life Ins. Company v. Calhoun,*
  596 F. Supp. 2d 882 (D.N.J. 2009) ........................7, 8, 14, 16, 32, 34

*Lowe v. Rennert,*
  869 S.W.2d 199 (Mo. Ct. App. 1993).......................................................20

*Ludwinska v. John Hancock Mutual Life Ins. Co.,*
  178 A. 28 (Pa. 1935) ................................................................................17

*Lum v. Bank of America,*
  361 F.3d 217 (3d Cir. 2004).......................................................................27

*Mechanic's Nat'l Bank v. Comins,*
  55 A. 191 (N.H. 1903) ..............................................................................20

*Merin v. Maglaki,*
  599 A.2d 1256 (N.J. 1992).........................................................................25

*Minnesota Mutual Life Ins. Co v. Ricciardello,*
  1997 WL 631027 (D. Conn. Sept. 17, 1997)..............................................19

*Mohr v. Prudential Ins. Co.,*
  78 A. 554 (R.I. 1911) ................................................................................21

*Moper Transp., Inc. v. Norbet Trucking Corp.,*
  943 A.2d 873 (N.J. 2008)...........................................................................10

*National Life & Acc. Ins. Co. v. Ball,*
  127 So. 268 (Miss. 1930)...........................................................................20

*Nelson v. Insurance Co. of North America,*
    264 F. Supp. 501 (D.N.J. 1967) ....................................................................................12

*New England Mut. Life Ins. Co. v. Caruso,*
    535 N.E.2d 270 (N.Y. 1989)...................................................................................22, 24

*New Testament Baptist Church Inc. of Miami v. State,*
    993 So. 2d 112 (Fla. Dist. Ct. App. 2008) ..................................................................16

*Obartuch v. Security Mut. Life Ins. Co.,*
    114 F.2d 873 (7th Cir. 1940) .......................................................................................17

*P.V. ex rel T.V. v. Camp Jaycee,*
    962 A.2d 453 (N.J. 2008)..............................................................................................10

*Paul Revere Life Ins. Co. v. Fima,*
    105 F.3d 490 (9th Cir. 1997) .......................................................................................19

*Paul Revere v. Haas,*
    644 A.2d. 1098 (N.J. 1994)......................................................................................26, 27

*People v. Alexander,*
    171 N.Y.S. 881 (N.Y. App. Div. 1918) .......................................................................24

*Pfizer, Inc. v. Employers Ins. of Wausau,*
    712 A.2d 634 (N.J. 1998)..............................................................................................11

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2008)............................................................................................8

*Process Plants Corp. v Beneficial Nat'l Life Ins. Co.,*
    385 N.Y.S.2d 308 (N.Y. 1976) ....................................................................................25

*Prudential Ins. Co. of Am. v. Mohr,*
    185 F. 936 (C.C.D.R.I. 1911) ......................................................................................24

*Ramirez v. STi Prepaid LLC,*
    644 F. Supp. 2d 496 (D.N.J. 2009) ..............................................................................27

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.,*
    311 F.3d 198 (3d Cir. 2002).....................................................................................27, 30

*Rolo v. City Investing Co. Liquidating Trust,*
    155 F.3d 644 (3d Cir. 1998)..........................................................................................27

*Saxon Construction & Management Corp. v. Masterclean of N.C., Inc.*,
   273 N.J. Super. 231 (App. Div. 1994) ............................................................21

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
   742 F.2d 786 (3d Cir. 1984).....................................................................27, 30

*State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*,
   417 A.2d 488 (N.J. 1980).........................................................................11, 13

*Stevens v. Woodmen of the World*,
   71 P.2d 898 (Mont. 1937) ............................................................................20

*Strawbridge v. New York Life Insurance Company*,
   504 F. Supp. 824 (D.N.J. 1980) ........................................................10, 23, 24

*Sun Life Assur. Co. of Canada v. Moran*,
   2009 U.S. Dist. LEXIS 76289 (D. Ariz. Aug. 11, 2009)........................22, 31

*Sun Life Assur. Co. of Canada v. Paulson*,
   2008 WL 451054 (D. Minn. Feb. 15, 2008) ...........................................16, 20

*Taylor v. JVC Ams. Corp.*,
   2008 U.S. Dist. LEXIS 43215 (D.N.J. May 30, 2008) .................................10

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003)...........................................................................2

*Tulipano v. U.S. Life Ins. Co. in City of New York*,
   154 A.2d 645 (N.J. Super. Ct. App. Div. 1959).................................14, 21, 25

*United Sec. Life Ins., Etc., Co. v. Brown*,
   113 A. 443 (Pa. 1921) ..................................................................................21

*United States Life Insurance Co. in the City of New York v Grunhut*,
   2007 N.Y. Misc. LEXIS 9114 (N.Y. Sup. Ct. Aug. 24, 2007) ..............24, 34

*Urbach v. Sayles*,
   1991 WL 236183 (D.N.J. Sept. 4, 1991) .....................................................27

*Vasquez v. Glassboro Service Ass'n, Inc.*,
   83 N.J. 86 (1980) .........................................................................................21

*Warnock v. Davis*,
   104 U.S. 775 (1881).....................................................................................15

*Warriner v. Stanton,*
    475 F.3d 497 (3d Cir. 2007).......................................................................10

*Washington v. Atlanta Life Ins. Co.,*
    136 S.W.2d 493 (Tenn. 1940)....................................................................21

*Werenzinski v. Prudential Ins. Co. of America,*
    14 A.2d 279 (Pa. 1940) .............................................................................20

*Wharton v. Home Sec. Life Ins. Co.,*
    173 S.E. 338 (N.C. 1934)...........................................................................20

*Wood v. New York Life Ins. Co.,*
    336 S.E.2d 806 (Ga. 1985) ........................................................................19

## STATUTES AND RULES

Fed. R. Civ. P. 9(b) ...............................................................................26, 27

40 Pa. Stat. Ann. § 512 .................................................................................22

Ala. Code § 27-14-3(g)..................................................................................22

Ariz. Rev. Stat. § 20-1104(A)........................................................................22

Ark. Code Ann. § 23-79-103(a).....................................................................22

Cal. Ins. Code § 10110.1(e) ..........................................................................22

Fla. Stat. Ann. § 627.404(1)..........................................................................22

Ga. Code Ann. § 33-24-3(i) ...........................................................................22

Kan. Stat. Ann. § 40-450(a) ..........................................................................22

Ky. Rev. Stat. Ann. § 304.14-040(2) .............................................................22

Md. Code Ann., Ins. § 12-201(a) ...................................................................22

Mont. Code Ann. § 33-15-201(1) ..................................................................22

N.J.S.A. 17:33A-2..........................................................................................13

N.J.S.A. 17B:24-1.1...........................................................................32, 33, 34

N.J.S.A. 17B:26-5...........................................................................................25

N.Y. Ins. Law § 3105.........................................................................................25

N.Y. Ins. Law § 3205......................................................................................33, 34

N.Y. Ins. Law § 3216.........................................................................................25

Neb. Rev. Stat. § 44-704(5) ..............................................................................23

Or. Rev. Stat. § 743.024(1) ...............................................................................23

R.I. Gen. Laws § 27-4-27(a) .............................................................................23

Va. Code Ann. § 38.2-301(A)............................................................................23

W. Va. Code § 33-6-2(a).....................................................................................23

Wash. Rev. Code § 48.18.030(1) .......................................................................23

## OTHER AUTHORITIES

29 Am. Jur., *Insurance* § 888 (1940) ...............................................................14

76 Am. Jur. 2d *Trusts* § 20 (2009).....................................................................35

John Alan Appleman and Jean Appleman, INSURANCE LAW AND PRACTICE § 319 ..........14

Charles Duhigg, *Late in Life, Finding a Bonanza in Life Insurance*, N.Y. Times,
December 17, 2006 .............................................................................................8

J. Alan Jensen & Stephan R. Leimberg, *Stranger-Owned Life Insurance:  A
Point/Counterpoint Discussion*, 33 ACTEC J. 110 (2007)..........................................7

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 ......................................11

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 ........................................11

Emma Silverman, *Cashing In:  An Insurance Man Builds A Lively Business In
Death – As Life Settlements Boom, Banks, Regulators Circle*, Wall St. J.,
Nov. 27, 2007......................................................................................................8

Plaintiff The Lincoln National Life Insurance Company, as successor by merger to Jefferson Pilot Life Insurance Company ("Lincoln"), by and through its attorneys, Drinker Biddle & Reath LLP, respectfully submits this brief in opposition to the motion to dismiss (the "Motion") filed by Yoel Schwarz and Ernest Schwarz, as Trustees of the Valeria Schwarz Irrevocable Life Insurance Trust (the "Defendants").

## INTRODUCTION

The allegations in the Amended Complaint, taken as true, establish that the Defendants have participated in a fraudulent and illegal stranger-originated life insurance (hereinafter, "STOLI") scheme. As such, Lincoln is seeking a declaratory judgment that two life insurance policies (the "Policies") insuring the life of Valeria Schwarz ("Ms. Schwarz") are void *ab initio* due to a lack of insurable interest. The Amended Complaint sets forth plausible facts supporting the claims upon which the relief requested can be granted for each cause of action asserted. The Defendants made fraudulent misrepresentations in the applications for the policies at issue with respect to the insured's income, net worth, in-force and pending life insurance policies and applications, and the reason for purchasing the insurance. Indeed, contrary to Defendants' argument, the owner and/or beneficial interest holder of the policies lacked an insurable interest in the policies when they were issued to a New Jersey trust and the contestable period should not be permitted to serve as a shield that protects the Defendants from the intentional fraud perpetrated against Lincoln in this case. Lincoln has sufficiently plead fraud and outlined the Defendants participation in the STOLI scheme, pursuant to which Ms. Schwarz was solicited to apply for two life insurance policies totaling $4,500,000 of coverage for the sole purpose of selling the policies to stranger investors, who did not have an insurable interest in her life, in the secondary market. Lincoln's claims are both legally viable and factually accurate. For the reasons set forth below, the Motion should be denied.

## STATEMENT OF FACTS[1]

Beginning in approximately May, 2006, the Valeria Schwarz Irrevocable Life Insurance Trust (the "Trust") and others, executed a plan, scheme, or design to procure insurance on the life of Valeria Schwarz for the benefit of stranger investors. *See* Lincoln National Life Insurance's Amended Complaint for Declaratory Judgment ("Am. Compl.") ¶ 2. This insurance was not sought by Ms. Schwarz to meet legitimate insurance needs. *Id.* In fact, it was not even sought by Ms. Schwarz. *Id.* Instead, it was sought by, and intended for, persons who were complete strangers to Ms. Schwarz and had no legally cognizable interest in Ms. Schwarz's life. *Id.* These STOLI policies generally, and the Policies in particular, are illegal wagering contracts. *Id.* They lack an insurable interest at inception and thus are void *ab initio*. *Id.*

Moreover, the Policies were not merely illegal wagering contracts, but were the product of fraud. Am. Compl. ¶ 3. The applicants, including the Trust, made numerous fraudulent and material misrepresentations and/or omissions in the applications regarding, *inter alia,* Ms. Schwarz's finances, the existence of other life insurance and/or applications, and the true purpose behind the procurement of the Policies. *Id.* Had Lincoln known of Ms. Schwarz's true financial condition, the existence of other life insurance and/or applications for life insurance, and/or the true purpose of the Policies, Lincoln would have declined to issue the Policies. *Id.*

However, in an effort to conceal this information from Lincoln, the Trust and/or others acting on its behalf, put into action a plan, effectuated through the use of New Jersey locations, to obtain two life insurance policies on the life of Valeria Schwarz for the purpose of

---

[1]  In addressing Defendants' Motion to Dismiss, the Court must accept as true the allegations contained in the Complaint. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Accordingly, the facts recited herein are taken from the Amended Complaint; and exhibits appended thereto, and do not represent this Court's factual findings.

transferring them, or an interest in them, to strangers in the secondary market. Am. Compl. ¶ 19. In accordance with this plan, on or about May 3, 2006, two applications were submitted to Lincoln (the "Applications") for life insurance policies in the amounts of $2,500,000.00 and $2,000,000.00 on the life of 85 year old, Ms. Schwarz.[2] Am. Compl. ¶ 20.

The Applications identified the Schwarz Trust, created on March 16, 2005, located at 124 East 4th Street, Lakewood, New Jersey 08701, as the proposed owner and sole beneficiary of the proposed policies. Am. Compl. ¶¶ 22, 23. The Applications indicated that they had been signed *in the State of New Jersey* on May 3, 2006, by: (a) Ms. Schwarz, as the proposed insured; (b) Yoel Schwarz, as trustee of the Schwarz Insurance Trust, the proposed owner of the proposed policies; and (c) Abraham Weinstock, as the broker of the proposed policies (collectively, the "Applicants"). Am. Compl. ¶ 24.

## A. Issuance of the Policies

On or about June 23, 2006, in reliance upon the representations on the Application that had been certified as true by the Applicants, Lincoln issued life insurance policy number JP5545877 ("Policy 77"), with a total death benefit of $2,500,000.00 on the life of Ms. Schwarz to the Schwarz Trust in Lakewood, New Jersey. Am. Compl. ¶ 31. As such, Policy 77 was delivered in the State of New Jersey to the Schwarz Trust in Lakewood, New Jersey. Am. Compl. ¶ 32. On or about June 26, 2006, in reliance upon the representations on the Application that had been certified as true by the Applicants, Lincoln issued life insurance policy number

---

[2] True and correct copies of the Applications, with redactions of certain personal identifiers, private health information, and financial account data, are attached to the Policies, which are attached to the Amended Complaint as Exhibits "A" and "B," respectively. The Defendants suggest an attempt by Plaintiff to redact the city and state of signature in the Exhibits attached to the Amended Complaint. That is far from the truth; the Plaintiff's attempt to highlight the city and state of signature inadvertently resulted in a blackening of the signature lines. As such, Plaintiff has attached "clean" copies of Exhibits "A" and "B." Both Exhibits indicate that the Applications were signed in New Jersey.

JP5549328 ("Policy 28"), with a total death benefit of $2,000,000.00 on the life of Ms. Schwarz to the Schwarz Trust in Lakewood, New Jersey. Am. Compl. ¶ 33. Similarly, Policy 28 was delivered in the State of New Jersey to the Schwarz Trust in Lakewood, New Jersey. Am. Compl. ¶ 34.

Accordingly, the Trust forwarded Lincoln the Policies' premium payments on checks which indicated that the Schwarz Trust, located in Lakewood, New Jersey, was the depositor and account owner. Am. Compl. ¶ 35. Likewise, at all times, Lincoln was directed to send, and did send, all policy account notices and statements to the Schwarz Trust in Lakewood, New Jersey. Am. Compl. ¶ 36.

**B.    Death and Claim Investigation**

Ms. Schwarz died on February 12, 2009, at the age of 87. Am. Compl. ¶ 37. Approximately one month later, a claim for the death benefits under the Policies was submitted to Lincoln by the Schwarz Trust in Lakewood, New Jersey. Am. Compl. ¶ 38. Following Ms. Schwarz's death and the submission of a claim for the death benefit under the Policies, Lincoln commenced a routine death claim investigation (the "Claim Investigation"). Am. Compl. ¶ 39. The Claim Investigation revealed that the submission of the Applications and the Policies that resulted were part of a conspiracy and collaborative effort by the Applicants and/or those acting on their behalf, or in concert with them, and other entities engaged in STOLI transactions to profit at Lincoln's expense from a gamble upon the life of Ms. Schwarz. Am. Compl. ¶ 40. Though this gamble may have produced, in the short term, a significant amount of financial gain for Ms. Schwarz, the third party, whom the interest in the Policies' death benefit was to belong, had the most to gain from this STOLI scheme. *Id.* In furtherance of the fraudulent scheme, the Applicants and/or those acting on their behalf or in concert with them falsely, knowingly and

- 4 -

intentionally made fraudulent and material misrepresentations and/or omissions to Lincoln concerning, *inter alia,* Ms. Schwarz's finances, the existence of other life insurance and/or applications, and the true purpose behind the procurement of the Policies. Am. Compl. ¶ 42.

### C.     Misrepresentations Regarding Ms. Schwarz's Finances

During the Claim Investigation, Lincoln learned that one or more fraudulent and material misrepresentations and/or omissions were made in the Applications regarding the financial situation of Ms. Schwarz as of the date on which the Applications were submitted, and the Policies were issued and delivered to the Schwarz Trust in Lakewood, New Jersey. Am. Compl. ¶ 43. The Applicants knowingly and fraudulently represented that Ms. Schwarz owned assets and/or had a net worth totaling $10,300,000.00 and an annual earned income of $433,000.00. Am. Compl. ¶ 44. Specifically, during the Claim Investigation, Lincoln learned that Ms. Schwarz lived with her son, Ernst Schwarz, for the past fifty-five years in a housing project developed by the New York Housing and Development Administration for persons or families of low income. Am. Compl. ¶ 45. In fact, Ernst Schwarz, Ms. Schwarz's eldest son, indicated that Ms. Schwarz did not have a savings or checking account, did not have any income except for Social Security payments, had not been employed for the past thirty years, did not receive a personal or widow's pension and did not own any real estate, vehicles or valuable personal belongings. Am. Compl. ¶ 46. As such, it is clear that the Applicants manipulated Ms. Schwarz's purported net worth and annual earned income in order to justify the requested amount of insurance. Am. Compl. ¶ 47.

Ms. Schwarz and/or the Trust also made misrepresentations regarding her application for and acceptance of additional insurance. Am. Compl. ¶ 48. Despite representations to the contrary in the Applications, the Applicants knew that Ms. Schwarz and/or the Trust had

submitted, or intended to submit, several applications with multiple life insurance companies for large face amount policies, including the submission of applications to MetLife and AIG for policies insuring the life of Ms. Schwarz. Am. Compl. ¶ 48. Indeed, the Applicants, despite representations in the Applications that Ms. Schwarz did not intend to obtain coverage with AIG, was issued and maintained a policy with AIG insuring the life of Ms. Schwarz. Am. Compl. ¶ 49.

Finally, Ms. Schwarz and/or the Trust made misrepresentations regarding the purpose of the Policies. Am. Compl. ¶ 50. Ms. Schwarz and/or the Trust and/or those acting on their behalf or in concert with them had – contrary to the statements contained within the Applications – either contracted or arranged to sell and/or assign the Policies, or the right to receive the proceeds of the Policies to one or more stranger investors. *Id.* In fact, at no time did the Applicants intend to purchase insurance for the benefit of any person or entity having an insurable interest in Ms. Schwarz' life. Am. Compl. ¶ 51. Rather, at all relevant times, the Applicants and/or those acting on their behalf or in concert with them expected and understood that the right to receive the death benefit payable under any policy acquired from Lincoln would belong to a third party having no insurable interest in Ms. Schwarz's life. Am. Compl. ¶ 51.

In furtherance of this scheme, the Applicants understood that the premiums due would not be paid by Ms. Schwarz; but instead, they expected that the premiums due under the Policies would be advanced and/or financed by a third party. Am. Compl. ¶ 52. As such, the Policies were purchased as part of a STOLI transaction and lacked the requisite insurable interest.

## I.   BACKGROUND

While not germane to the issues argued in the Motion, the Defendants provide a lengthy and self-serving description of the secondary market. The Defendants' portrayal of the

secondary market in their Motion is inaccurate, accusatory and greatly exaggerated.  Judge

Pisano of the District Court of New Jersey, in a case similar to this one, clearly laid out an

accurate and unprejudiced background of the secondary market and STOLI transactions in

*Lincoln National Life Ins. Company v. Calhoun*, 596 F. Supp. 2d 882, 884-87 (D.N.J. 2009).

The Court in *Calhoun* stated that:

> This case concerns an aspect of a growing cottage industry in the
> insurance market, known as stranger-owned life insurance policies or
> "STOLI" plans, in which an individual, typically an elderly one, procures
> life insurance on his own life in order to subsequently assign the policy to a
> third party following the lapse of the two-year contestability period.  STOLI
> transactions are the product of the burgeoning "life settlements" market, in
> which insureds sell unneeded or unaffordable permanent policies to
> investors.  *See* Jensen & Leimberg, *Stranger-Owned Life Insurance: A
> Point/Counterpoint Discussion*, 33 ACTEC J. 110, 111 (2007).  STOLI
> schemes emerged as investor demand for these policies exceeded supply,
> leading industry speculators to solicit insureds to take out additional
> policies, even if the insureds had no particular need for supplemental
> insurance coverage.  Often, the insureds are persuaded to engage in these
> STOLI transactions because their bank accounts have run dry and they are
> forced to spend increasing amounts of money on medical care.  As one
> court put it, '[o]ften pejoratively termed stranger-owned life insurance
> policies these policies enable the insured to obtain ready cash by selling his
> policy to a stranger whose only interest in the insured is his early demise."
> *Life Prod. Clearing LLC v. Angel*, 530 F. Supp. 2d 646, 648 (S.D.N.Y.
> 2008).
>
> A typical STOLI transaction is structured as follows: An agent
> attempts to sell a life insurance policy to an elderly insurable candidate, and
> offers the candidate up-front cash in exchange for promising a future sale of
> the policy.  The agent informs the candidate that the candidate will be able
> to obtain the policy at virtually no cost to himself, because the agent has
> secured non-recourse financing to purchase the policy.  The candidate then
> acts as a "nominal grantor" of a life insurance trust that is used to apply for
> the policy.  'At that time, the agent will tell the insured that, in all
> probability, the policy will be sold to investors for a price that will pay the
> loan and accrued interest, leaving a profit to split between the agent and the
> insured. . . .  If the insured survives [the two-year contestability period on
> the policy], the owner (the life insurance trustee) typically has two options,
> in addition to the sale of the policies to investors:  (1) have the insured pay
> the outstanding debt with accrued interest and retain the policy; or (2)
> transfer the policy to the lender in lieu of foreclosure.'  Jensen & Leimberg,
> *supra*, at 111.  The insureds are usually able to garner significantly greater

sums from the speculators than they would receive by surrendering the policy to the insurance company. *See* Liam Pleven & Rachel Emma Silverman, *Cashing In: An Insurance Man Builds A Lively Business In Death – As Life Settlements Boom, Banks, Regulators Circle*, Wall St. J., Nov. 27, 2007, at A1.

   As the *New York Times* reported several years ago, '[t]rading in life insurance policies held by wealthy seniors has quietly become a big business.  Hedge funds, financial institutions . . ., and investors . . . are spending billions to buy life insurance policies from the elderly.  Other investors are paying seniors to apply for life insurance, lending the money to buy the policies, and then reselling them to speculators.'" Charles Duhigg, *Late in Life, Finding a Bonanza in Life Insurance*, N.Y. Times, December 17, 2006, at 1;

*Calhoun*, 596 F. Supp. 2d at 884-87 (D.N.J. 2009).

   The Court in *Calhoun* clearly acknowledged and expressed concern for the growing market created by the illegal wagering contracts known as STOLI plans.  STOLI investors are using traditional life insurance as a morbid and speculative investment vehicle to gamble on the early demise of insureds.  These types of transactions are illegal and undoubtedly violate public policy.  The Policies are precisely the type of STOLI product denounced by well-established law and public policy.

## II.   STANDARD ON A MOTION TO DISMISS

   When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008).  In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Id.* at 45-46.  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 545 (2007).  The Court shall deny the motion to dismiss unless it appears to a certainty that the plaintiff would not be entitled to relief under *any* plausible state of facts that could be proved in support of its claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Requiring that a claim be "plausible" does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal what has been alleged to be true. *D'Aiuto v. City of Jersey City*, 2007 U.S. Dist. LEXIS 57646, 6-7 (D.N.J. Aug. 8, 2007).  Lincoln has plead facts sufficient to establish the claims asserted and has certainly pled facts sufficient to meet the plausible standard required in a motion to dismiss.

## III.    CHOICE OF LAW[3]

---

[3]  In *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust*, No. 08-cv-03489 (D.N.J. 2008), a case with nearly identical facts and legal allegations, Judge Cooper denied a motion to dismiss stating that choice-of-law and contestable claims are fact-driven questions that require a more complete record than that presented on a 12(b)(6) motion.  Transcript of Motion Hearing at 52-56, *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust*, No. 08-cv-03489 (D.N.J. 2008)(No. 55).  Addressing nearly identical arguments to the ones made in this case, the court specifically stated in its oral decision:

> I'm denying this motion ... The primary argument made in support of the motion to dismiss this case is that whether, under New Jersey or New York law, once a policy of life insurance has reached the two year incontestable mark it cannot be rescinded even for fraud or even for lack of an insurable interest.  And that being the case, an aggrieved insurer cannot make an attempt to end run the incontestability by asserting any claims for damages either under common law or statutory or even RICO grounds.
>
> Both parties begin with a discussion as to whether New York or New Jersey law should apply.  Suffice it to say that those are fact-driven questions and I would not dismiss this case on a 12(b)(6) motion where there are choice of law issues here.  Frankly, I don't think this choice of law issue is going to be even close once all of the facts are fleshed out.  New Jersey law – conflict of law does look to the place of residence of the insured, it's true, but only provides that such should control the choice of law if other important policies of the forum state are not countervailing.
>
> As I look at the way in which this policy was applied for and I look at some of the other cases involving similar scenarios, it appears to me that if anything the applicants for this policy, whoever they are, were seeking to possibly manufacture a conflict of law issue where one most likely would not otherwise exist.  New Jersey would not countenance that and nor do I think would New York.  Suffice it to say that the balance of the facts that have been set forth in the first amended complaint appears to favor New Jersey's public policy and New Jersey law would probably apply here.

(Continued)

Federal courts apply the law of the forum state when making choice-of-law

determinations.[4] *Moper Transp., Inc. v. Norbet Trucking Corp.*, 943 A.2d 873, 877 (N.J. 2008).

New Jersey has recently revisited the principles governing the analysis of choice-of-law

questions. In *P.V. ex rel T.V. v. Camp Jaycee,* 962 A.2d 453 (N.J. 2008), the majority of the

Supreme Court abandoned the governmental interest test and adopted in its place the significant

relationship test enunciated in the *Restatement (Second) of Conflict of Laws* (1971).

New Jersey's most significant relationship test has two steps. The first step is to examine

the substance of the potentially applicable laws to determine whether an actual conflict exists.

*Camp Jaycee,* 962 A.2d at 460 (N.J. 2008). If there is no distinction between the potentially

---

(Continued)

> We do not need to indulge at this point in an elaborate prediction of what New Jersey law will do with a claim of legal fraud in the face of an incontestability clause because the 1995 New Jersey Supreme Court in the *Ledley* case, albeit in dicta, but dicta from the highest court in the state, with an unassailable voice of authority stated unequivocally, "Even after the expiration of the contestability period an insurer may deny a claim if the insured committed fraud in the policy application," 138 N.J. 627 at 635, in the context of a case involving a life insurance policy, dicta only because that policy had not become incontestable until suit.

> The *Strawbridge* case by my now sainted colleague, Judge Ackerman, was decided long before the *Ledley* case came out from the New Jersey Supreme Court. It is clear that New Jersey has a strong public policy against fraud by the insured. It also has a statute that reinforces its strong public policy against fraud against insurance companies by the insured or by any other persons. That's the New Jersey Insurance Fraud Protection Act. And if, as the New Jersey Supreme Court stated in *Ledley,* fraud in the application will overcome a defense of incontestability, then certainly lack of an insurable interest would also overcome such a defense in New Jersey.

Transcript of Motion Hearing at 52-56, *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust*, No. 08-cv-03489 (D.N.J. 2008)(No. 55).

[4] It would be premature to render a choice-of-law decision at the pleading stage, without the benefit of a full factual record. In general, a choice-of-law decision cannot be made on a motion to dismiss. *Taylor v. JVC Ams. Corp.*, No. 07-4059, 2008 U.S. Dist. LEXIS 43215, at *11-12 n.3 (D.N.J. May 30, 2008). A choice-of-law decision by its very nature is fact dependent and requires a factual record. *See id. See also Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007) ("Each choice-of-law case presents its own unique combination of facts -- the parties' residence, the place and type of occurrence and the specific set of governmental interest -- that influence the resolution of the choice-of-law issue presented."). Thus, in this case, where there is an insufficient factual record, additional facts must be elicited before making a choice-of-law determination.

applicable laws, there is no choice-of-law issue to be resolved and the court will apply the law of the forum state. *Id.*

If an actual conflict exists, the second step of the most significant relationship test requires an analysis of the factors set forth in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 193 and 6. *Pfizer, Inc. v. Employers Ins. of Wausau*, 712 A.2d 634, 638-39 (N.J. 1998). The court should first look to Section 193 and apply the law of the place that "the parties understood ... to be the principal location of the insured risk ... unless some other state has a more significant relationship under the principles stated in [*section*] 6 to the transaction and the parties." *Id.* at 638. In assessing the most significant relationship, the court must consider the following factors: (1) competing interests of relevant states; (2) national interests of commerce among several states; (3) interests of parties; (4) interest of underlying contract law; and (5) interests of judicial administration. *Id.* at 639; *General Ceramics Inc. v. Firemen's Fund Ins. Co.*, 66 F.3d 647, 656 (3d Cir. 1995).

The goal of the most significant relationship test is to determine which state has the most significant connections with the parties and the transaction, *Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n. Ins. Co.*, 629 A.2d 885, 888 (N.J. 1993), and which state has the greatest interest in resolving the particular issue that is raised. *Gantes v. Kason Corp.*, 679 A.2d 106, 109 (N.J. 1996). Ultimately, the significant relationship test focuses upon that state having the most meaningful connections with the transaction and the parties in issue. *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 417 A.2d 488, 491 (N.J. 1980).

In the insurance context, "[t]he law of the place where the contract ... was entered into determined the rights of the parties under the contract." *Gilbert*, 629 A.2d at 888 (N.J. 1993); *Boyson, Inc. v. Archer & Greiner, P.C.*, 705 A.2d 1252, 1256 (N.J. Super. Ct. App. Div. 1998);

*see Buzzone v. Hartford Accident & Indem. Co.*, 129 A.2d 561, 563 (N.J. 1957) (stating "we think it too settled to be questioned that the rights and liabilities of the insurer under the policy and the statutory impact thereon are to be determined by the law of the state where the contract was made. The question of what is the obligation imposed by a contract of insurance ..., has usually rightly been held to be governed by the law of the place of contracting."); *Nelson v. Insurance Co. of North America*, 264 F. Supp. 501, 503 (D.N.J. 1967) (applying law of the state where group health policy was applied for, countersigned, issued, delivered and the premiums were paid). In *Estate of Simmons,* the Court held that in resolving conflict-of-law issues regarding insurance contracts, the law of the place of contracting usually governs. This is because "the law of the place of contract generally comports with the reasonable expectations of the parties concerning the principal situs of the insured risk." 417 *A.*2d 488 (N.J. 1980); *see Jaworowski v. Guerin,* 2008 WL 2219934, at \*7 (N.J. Super. App. Div. May 30, 2008).

New Jersey law is clear that the law of the place of contracting for insurance is decisive in evaluating a choice-of-law determination.[5] The contracts at issue are the Policies issued on the life of Ms. Schwarz. The Policies were contracted for in New Jersey. In fact, the Policies were executed, issued and delivered in New Jersey. The beneficiary was a Trust located in New Jersey and all premium payments were delivered on checks executed in New Jersey. The reasonable expectations of the contracting parties is that New Jersey law applies.

---

[5]  The Defendants cite *Kievit v. Loyal Protective Life Ins. Co.*, 170 A.2d 22 (N.J. 1961) for the proposition that a "*life insurance policy* is determined by the local law of the state where the insured was domiciled at the time the policy was issued." Motion p. 8. This is an inaccurate representation and the case is clearly distinguishable. The *Kievit* case involved an *accident* policy and that policy was issued to a New Jersey resident, through a New Jersey agent and was not binding until approved by the New Jersey home office. *Kievit*, 170 A.2d at 32 (N.J. 1961). Further, the Court concluded that they did not have to pursue the choice-of-law inquiry further since there had been nothing persuasive to suggest another state's law apply. *Id.* The Defendants also cite to *2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*, 2009 WL 2222935 (S.D.N.Y. July 27, 2009), which is inapposite because it applies New York's "grouping of contacts" choice-of-law analysis.

Further, New Jersey has an extremely significant public interest in detecting, preventing and punishing incidents of insurance fraud within its borders. There is no question that the transaction at issue involves substantial fraud. If application of New York law would permit the fraud to go unchecked, when New Jersey law provides a substantial remedy, New Jersey has a compelling interest in applying its own law. This Court specifically observed this interest in *Allianz Life Ins. Co. of N. Am. v. Estate of Bleich*, 2008 U.S. Dist. LEXIS 90720, at *17 (D.N.J. Nov. 6, 2008) stating that a life insurance policy issued pursuant to New Jersey law "bears on the local interest in deciding the matter as well as New Jersey's public policy regarding the interpretation of life insurance policies." In accordance with this axiom, New Jersey has codified the Insurance Fraud Prevention Act.[6] The Fraud Prevention Act specifically states that:

> "The purpose of th[e] act is to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims."

N.J.S.A. 17:33A-2.

Given the fact that the insurance contracts were executed in New Jersey and New Jersey's strong public interest in deterring insurance fraud, it is clear that New Jersey law applies in this case.

## IV.   THE POLICY REMAINS CONTESTABLE BY LINCOLN

It is well-settled that an insurance policy is void under New Jersey law if it lacks an insurable interest or is violative of public policy or good morals. This Court in *Calhoun* stated that "[l]ife insurance polices must be secured by an insurable interest to be valid… [and] '[a]

---

[6] In compliance with this statute, New Jersey has begun a fraud investigation into the Schwarz STOLI scheme.

contract of insurance upon a life in which the [beneficial interest holder] has no interest is a pure wager that gives the [beneficial interest holder] a sinister counter interest in having the life come to an end.'" *Calhoun*, 596 F. Supp. 2d at 889 (D.N.J. 2009) (quoting *Grigsby v. Russell*, 222 U.S. 149, 155 (1911). Further, the Court in *Tulipano v. U. S. Life Ins. Co. in City of New York*, 154 A.2d 645, 650 (N.J. Super. Ct. App. Div. 1959) specifically stated that, "it has generally been held that an insurance policy violative of public policy or good morals cannot be enforced simply because the incontestability period has run." *See* 29 Am.Jur., Insurance, § 888, p. 680 (1940); *Commonwealth Life Ins. Co. v. George*, 28 So.2d 910 (Ala.1947); *Home Life Ins. Co. of N.Y. v. Masterson*, 21 S.W.2d 414 (Ark. 1929); *Bernier v. Pacific Mut. Life Ins. Co. of Cal.*, 139 So. 629 (La. 1932); *Beasley v. Missouri State Life Ins. Co.*, 179 S.E. 777 (S.C. 1935). Incontestability clauses are not intended to be used to "legitimize a clear fraud, *deliberately perpetrated*," upon an insurer. John Alan Appleman and Jean Appleman, INSURANCE LAW AND PRACTICE § 319 (emphasis added).

Here, Lincoln alleges that the Policies were procured by the Applicants and/or those acting on their behalf as a product of a STOLI scheme. The scheme called for individuals with no insurable interest in the life of Ms. Schwarz to obtain an illegal wagering contract for the beneficial interest in the Policies. The practical effect of this scheme results in individuals having a direct financial interest in seeing Ms. Schwarz's life end prematurely. This scheme was in direct contradiction to the law, public policy and good morals. Thus, the Policies are void *ab initio*.

However, the Defendants argue that Lincoln's insurable interest claim is time-barred under the incontestability clause in the Policies, as it was not brought within two years of the issuance of the Policies, and that no New Jersey federal or state court would permit an exception

- 14 -

to the incontestability laws of New Jersey where a policy is challenged for lack of an insurable interest after two years of issuance. *See* the Motion, pp. 12-19. However, the real issue is whether New Jersey courts have provided that insurable interest cannot be raised after passage of the contestability period. It has not, and the burden is on the Defendants to provide the basis for overcoming the insurable interest requirements and why an incontestability provision in a contract – a provision that is not even applicable – should take precedent over the long-standing public policy against wagering contracts. The Defendants have failed to meet this burden and Lincoln's claim that the Policies lack an insurable interest and are void *ab initio* is not barred by the contestability period under New Jersey law.

### A.     Public Policy and Law Preclude "Wagering Contracts"

The public policy against wagering contracts and the requirement for insurable interest dates back to *Warnock v. Davis*, 104 U.S. 775 (1881), in which the Court stated that for there to be insurable interest:

> there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. *They are, therefore, independently of any statute on the subject, condemned, as being against public policy.*

*See id.* at 779. That is exactly the problem with STOLI policies: stranger-investors are directly interested in, and hoping for, the early death of the insured; they have no personal relationship with the insured and are being forced to pay very large premium payments to keep the policy in force while the insured is alive. The quicker the insured dies, the better the return on their investment.

New Jersey law mandates that "no person shall *procure or cause to be procured* any insurance contract upon the life, health or bodily safety of another individual unless the benefits

under that contract are payable to the individual insured or his personal representative, or to a person having, at the time when that contract was made, an insurable interest in the individual insured. N.J.S.A. 17B:24-1.1(b). New Jersey law further provides that if a party shows no insurable interest at the inception of the contract, then "there would be no actual loss; the contract would thus be a pure gamble." *Calhoun*, 596 F. Supp. 2d at 889 (D.N.J. 2009) (quoting *Sun Life Assurance Co. of Canada v. Paulson*, No. 07-3877, 2008 WL 451054, at *2 n. 4 (D.Minn. Feb. 15, 2008). In other words, a policy lacking insurable interest is void from inception, or void *ab initio*, and never came into existence.

## B.    Incontestability Provisions Do Not Apply to Wagering Contracts that Are Void *Ab Initio*

Moreover, incontestability provisions do not apply to policies that are void *ab initio*, thus permitting an insurer to raise lack of insurable interest at any time.[7]   Courts allow a party to raise lack of insurable interest where an incontestability clause might otherwise be applicable because a lack of insurable interest at inception renders the policy void *ab initio*, and thus the policy never came into effect. It follows that if no contract ever came into effect, then neither did any of the contractual provisions, including the incontestability clause. In other words, the

---

[7] There is a difference between a contract that is void *ab initio* and one that is voidable. It has been stated generally:

> [t]he difference between a contract that is void *ab initio* and one that is merely voidable is that "a voidable contract can be ratified and enforced by the obligor, although not by the wrongdoer, while the void contract cannot be." [Citations omitted.] In other words, a contract that is void *ab initio* is treated as though it never existed; neither party can chose [sic] to ratify the contract by simply waiving its right to assert the defect. On the other hand, if a contract is merely voidable, a party can either opt to void the contract based upon that defect, or choose, instead, [to] waive that defect and ratify the contract despite it.

*See generally Ill. State Bar Assoc. Mutual Ins. Co. v. Coregis Ins. Co.*, 821 N.E.2d 706, 713 (Ill. App. Ct. 2004); *see also New Testament Baptist Church Inc. of Miami v. State*, 993 So. 2d 112, 116 (Fla. Dist. Ct. App. 2008) (noting generally that "the difference between void and voidable contracts is whether they offend public policy. Contracts that offend an individual, such as those arising from fraud or misrepresentation, are voidable. Only contracts that offend public policy or harm the public are void *ab initio*"). As provided in the plethora of cases below, contracts lacking insurable interest are void *ab initio*.

invocation of an incontestability provision presupposes a valid contract, and thus an incontestability clause does not apply to a policy void *ab initio*. *See Beard v. Am. Agency Life Ins. Co.*, 550 A.2d 677, 689 (Md. 1988) (citations omitted) ("Incontestability does not apply to a policy which is void *ab initio*. The invocation of an incontestability provision presupposes a basically valid contract."); *Brown v. Mass. Casualty Ins. Co.*, 1995 U.S. App. LEXIS 23779, at *6-7 (9th Cir. Aug. 8, 1995) (insured must have insurable interest at the time the policy becomes effective; if no insurable interest exists, the policy is void *ab initio* and may be contested "even after the contestability period has expired"); *Obartuch v. Security Mut. Life Ins. Co.*, 114 F.2d 873, 878 (7th Cir. 1940) (the incontestable clause "presupposes a valid contract and not one void *ab initio* – it cannot be used as a vehicle to sanctify that which [sic] never existed ... [Here,] . . . the policies as issued were void and the incontestable clause without effect.").[8]

Indeed, as concisely stated in *Bromley's Adm'r v. Washington Life Ins. Co.*, 92 S.W. 17 (Ky. 1906):

> the incontestable clause is no less a part of the contract than any other provision of it. If the contract is against public policy the court will not lend its aid to its enforcement. The defense need not be pleaded. If at any time it appears in the process of the action that the contract sued upon is one which the law forbids, the court will refuse relief. The parties to an illegal contract cannot by stipulating that it shall be incontestable, tie the hands of the court and compel it to enforce contracts which are illegal and void. If this were allowed, then the law might be evaded in all cases and the aid of the court might be secured in aid of its infraction.

*Id.* at 18. This is for the sake of the law itself, so that a court will not be forced to enforce what it has forbidden and denounced. *Id.*

---

[8]  As one court provided, in determining the existence of a contract, the "contract must be made by someone capable of contracting under the insurance law. Without this[,] neither the incontestable clause contained in the policy nor the policy itself has any life. The clause can rise no higher than the policy; the incontestable clause cannot of itself create the contract." *Ludwinska v. John Hancock Mutual Life Ins. Co.*, 178 A. 28, 30 (Pa. 1935) (further citing to cases where, if there was no contract between the parties, there was no incontestable clause applicable to the parties).

Furthermore, to the extent this Court determines there is a conflict between the insurable

interest requirements and the requirement that an insurance policy have an incontestability

provision, where a statutory incontestability requirement comes into conflict with another

statutory requirement, the incontestability requirement may be defeated. *See Beard v. Am.*

*Agency Life Ins. Co.*, 550 A.2d 677, 690 (Md. 1988) ("courts in other jurisdictions have held that

when a statutory incontestability requirement comes into conflict with another statutory

requirement, the incontestability requirement may be defeated"). Indeed, Maryland, which has

similar statutory insurable interest and incontestability provision requirements as New Jersey,[9]

has concluded that "while the incontestability statute serves the substantial public interest in

protecting claimants from the possibility of expensive litigation, the public policy behind the

statutory requirement that the procurer of insurance have an insurable interest in the insured is an

even more compelling goal." *Id*. at 690-91 (concluding that lack of insurable interest rendered

insurance contracts void *ab initio*, and the incontestability clause did not apply and was not a bar

to the lack of insurable interest defense); *see also Guarantee Trust Life Ins. Co. v. Wood*, 631 F.

Supp. 15, 9-11 (N.D. Ga. 1984) (even though insurer was statutorily required to include

---

[9]  The insurable interest provision discussed in *Beard* provided:

> Any individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person. But no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when such contract was made, an insurable interest in the individual insured.

*See Beard*, 550 A.2d at 681. The provision at issue requiring an incontestability provision in the contract provided:

> There shall be a provision that the policy (exclusive of provisions relating to disability benefits or to additional benefits in the event of death by accident or accidental means) shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of two (2) years from its date of issue.

*See Beard*, 550 A.2d at 689. And the policy provision provided, "After this policy has been in force during the lifetime of the insured for two years from the issue date we cannot contest it except for non-payment of premiums when due. This paragraph does not apply to any benefits payable under any disability or accidental death rider." *Id*. at 698 n.4.

- 18 -

incontestability clause, the statutory mandate that insured apply for or consent in writing to issuance of the insurance took priority; because insured did not apply or consent to the insurance, the policies were void *ab initio* as against public policy and incontestability clause was not applicable).

## C. This Court Should Follow the Majority Rule and Reject the Trust's Argument on Incontestability

The overwhelming majority of Courts across the nation that have addressed this issue provide that the lack of insurable interest at inception is an issue that may be raised notwithstanding an incontestability provision,[10] or otherwise provide at least that a policy lacking

---

[10] *See Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490 (9th Cir. 1997) (an insurance policy is void *ab initio* where the insured lacks insurable interest and "California law provides that a policy which is void *ab initio* may be contested at any time, even after the incontestability period has expired"); *John Hancock Life Ins. Co. v. Rubenstein*, No. 09-21741-CIV-UNGARO (S.D. Fla. Sept. 1, 2009) (holding that "[i]f the policy is void *ab initio* because an insurable interest is lacking, the incontestability clause would be of no effect"); *Minnesota Mutual Life Ins. Co v. Ricciardello*, 1997 WL 631027, *2 fn.2 (D. Conn. Sept. 17, 1997) ("incontestability clause is also not to bar the defense that the policy was void ab initio, or the defense of lack of insurable interest"); *Kentucky Cent. Life Ins. Co. v. McNabb*, 825 F. Supp. 269, 272-73 (D. Kan. 1993) ("person who insurance the life of another must have an insurable interest therein, or the policy is deemed void *ab initio*"; procurer failed to establish insurable interest, policy was void *ab initio*, and "incontestability clause does not bar plaintiff [insurer] from asserting lack of insurable interest"); *Commonwealth Life Ins. Co. v. George*, 28 So. 2d 910, 912 (Ala. 1947) (a policy lacking insurable interest "is void and unenforcible [sic] on the ground of public policy, it being merely a wagering contract...such a policy is void at its inception and is not rendered valid by a clause declaring it incontestable after a specified period of time"; concluding that "incontestable clause furnish[ed] no answer to the defense that the plaintiff was without insurable interest" and that the policy was void); *Home Life Ins. Co. v. Masterson*, 21 S.W.2d 414, 417 (Ark. 1929) (policy was void as wager contract and against public policy, and argument that policy was incontestable failed); *Carter v. Cont'l Life Ins. Co.*, 115 F.2d 947, 947-48 (D.C. Cir. 1940) (insurer successfully defended on the ground that policy lacked insurable interest; policy was void *ab initio* and incontestable clause did not prevent insurer from asserting defense); *Wood v. New York Life Ins. Co.*, 336 S.E.2d 806, 811-12 (Ga. 1985) (incontestability clauses "presuppose the existence of a contract 'in force.' However, an insurance contract that is void *ab initio* as against public policy is never 'in force,' cannot be ratified or affirmed, and is not subject to being enforced by the courts"; a "contrary conclusion would permit the unreasonable result that an incontestability clause would breathe life into an insurance contract which the General Assembly intended to have no life"); *Charbonnier v. Chicago Nat'l Life Ins. Co.*, 266 Ill. App. 412, 421-22 (1932) (policy taken out by one with no insurable interest in the insured is void at its inception and is not rendered valid by a clause declaring it incontestable after the lapse of a specific period of time); *Bromley's Adm'r.*, 92 S.W. at 18 ("incontestable clause is no less a part of the contract than any other provision of it. If the contract is against public policy, the court will not lend its aid to its enforcement...The parties to an illegal contract cannot by stipulating that it shall be incontestable, tie the hands of the court and compel it to enforce contracts which are illegal and void"); *Goodwin v. Fed. Mut. Ins. Co.*, 180 So. 662, 665 (La. Ct. App. 1938) (beneficiaries endeavored to effect the insurance for the purpose of 'speculating on the hazard of a life'...the policies *ab initio* were void and without legal effect"; also citing with approval to Couch's Encyclopedia on Insurance, "an incontestable clause in an insurance policy does not prevent the insurer from defending on the ground that it was issued to one having no insurable interest, and is, therefore, void as against public policy"); *Beard*, 550

(Continued)

insurable interest is void *ab initio*.[11] As previously stated, New Jersey has not specifically

---

(Continued)

A.2d at 691 (having found that policies lacked insurable interest and that they were void *ab initio*, the incontestability clause did not apply and "is not a bar to the lack of insurable interest defense"); *Harris v. Sovereign Camp*, 1940 WL 2917, at *2 (Ohio Ct. App. Feb. 19, 1940) (citing with approval the proposition that an incontestability clause does not prevent an insurer from defending on the ground of want of insurable interest after expiration of contestable period); *Henderson v. Life Ins. Co. of Va.*, 179 S.E. 680, 692 (S.C. 1935) (contract lacked insurable interest at inception and was void *ab initio* as a wager contract against public policy; the incontestable clause was part of the contract, and "when the contract fails, the incontestable clause necessarily fails with it").

[11]  *See Sun Life Assur. Co. of Canada v. Moran*, 2009 U.S. Dist. LEXIS 76289, *9-10 (D. Ariz. Aug. 11, 2009) (widely held that wagering policies are "void as against public policy because 'wager policies' are 'speculative contracts on human life'"); *Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, at *3 (M.D. Fla. May 26, 2009) ("'Florida courts have long held that insurable interest is necessary to the validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and void *ab initio* as against public policy'"); *Sun Life Assur. Co. of Canada v. Paulson*, 2008 WL 451054, *1-2 (D. Minn. Feb. 15, 2008) (under Minnesota law, "an insurance policy is void *ab initio* if, at the time of the policy's issuance, the insured has no insurable interest"; Minnesota Supreme Court would consider a life insurance policy void as against public policy if the policy was "procured under a scheme, purpose, or agreement to transfer or assign the policy to a person without an insurable interest in order to evade the law against wagering contracts"); *Fuller v. Metropolitan Life Ins. Co. of N.Y.*, 41 A. 4, 15 (Conn. 1898) ("All that distinguishes ordinary life insurance from a wagering contract, is the theory of protection against damage that may be suffered through another's death.  This protection may be purchased by the insured on behalf of his own family, or of those he sees fit to make his beneficiaries; it may be purchased by one on his own account where he may suffer damage from another's death by reason of kinship, the relation of creditor, or other insurable interest.  But when this element of protection is entirely eliminated, the insurance is a wager and the contract is void"); *Hilliard v. Jacobs*, 874 N.E.2d 1060, 1063 (Ind. Ct. App. 2007) (where "a policy is issued to one upon the life of another, the former having no insurable interest in the latter, it is void, being in the nature of a wagering contract, and hence in contravention of public policy"); *Farmers Butter and Dairy Co-op. v. Farm Bureau Mut. Ins. Co.*, 196 N.W.2d 533 (Iowa 1972) ("In the absence of [an insurable] interest, legal, equitable or real, in the thing or right insured the policy of coverage is nothing more than a mere wager, and therefore void *ab initio*"); *National Life & Acc. Ins. Co. v. Ball*, 127 So. 268, 268 (Miss. 1930) (contract lacking insurable interest is mere wager and against public policy, and there is nothing that the particular parties to such a contract "may do which will make it otherwise than it was *ab initio* - void as against public policy, and therefore nonenforceable by the courts"); *Stevens v. Woodmen of the World*, 71 P.2d 898, 904 (Mont. 1937) (it is generally held that "notwithstanding an incontestable clause, the insurer is entitled, after the expiration of the contestable period, to defend on the ground of want of insurable interest if the policy otherwise would have been void for lack of insurable interest"); *Lowe v. Rennert*, 869 S.W.2d 199, 202 (Mo. Ct. App. 1993) (person cannot take out insurance on a person in which he has no insurable interest; "such a policy or contract is void and unenforceable on the grounds of public policy, it being merely a wagering contract"); *Chamberlain v. Butler*, 86 N.W. 481, 482 (Neb. 1901) (dicta, the "assignment of a policy to party not having an insurable interest is as objectionable as the taking out of a policy in his name," where the insured took out the policy in pursuance of an agreement that a third-party, having no insurable interest in his life, should, for consideration, receive the death benefits); *Mechanic's Nat'l Bank v. Comins*, 55 A. 191, 192 (N.H. 1903) (it is "firmly established that insurance procured by one person upon the life of another, the former having no insurable interest in the latter, is void as a wager contract, against public policy, which condemns gambling speculations upon human life"); *Wharton v. Home Sec. Life Ins. Co.*, 173 S.E. 338, 339 (N.C. 1934) (policy lacked insurable interest and was "void and unenforceable on grounds of public policy, it being merely a wagering contract"; refusing to apply incontestability clause, as the incontestable clause is no less part of the contract than any other provision of it and the parties could not deprive the courts of the power to enforce the public policy of the state by their judgments); *Brett v. Warnick*, 75 P. 1061, 1064 (Or. 1904) (policy procured without insurable interest is denominated by the law as a wagering contract and, "being in contravention of public policy, the holder will not be permitted to profit by his investment"); *Werenzinski v. Prudential Ins. Co. of America*, 14 A.2d 279, 280 (Pa. 1940) ("a person cannot take out a valid and enforceable policy of insurance for his own benefit, and pay the premiums thereon, on a life in which he

(Continued)

- 20 -

addressed the issue.  However, the New Jersey Supreme Court would undoubtedly follow the

majority rule based on the same reasoning followed by the aforementioned courts.  *See Hebela v.*

*Healthcare Ins. Co.*, 370 N.J. Super. 260, 270 (App. Div. 2004) (holding that "our courts will

decline to enforce an insurance policy, like any other contract, if its enforcement would be

contrary to public policy"); *Tulipano*, 154 A.2d at 650 (N.J. Super. Ct. App. Div. 1959) (stating

that "an insurance policy violative of public policy or good morals cannot be enforced simply

because the incontestability clause has run"); *Vasquez v. Glassboro Service Ass'n, Inc.*, 83 N.J.

86, 99 (1980) (holding that "no contract can be sustained if it is inconsistent with the public

interest or detrimental to the common good"); *Saxon Construction & Management Corp. v.*

*Masterclean of N.C., Inc.*, 273 N.J. Super. 231, 237 (App. Div. 1994) (maintaining that "it is

equally well recognized that our courts may refuse to enforce contracts that are unconscionable

or violate public policy").

---

(Continued)

has no insurable interest"; where an assignment "is merely subterfuge, planned or contemplated when the policy was issued, to enable the assignee thereby to accomplish what he could not have done directly, namely to obtain insurance on a life wherein he had no insurable interest, it would not be sustainable"); *United Sec. Life Ins., Etc., Co. v. Brown*, 113 A. 443, 445 (Pa. 1921) ("where, as here, [the insurance] was issued for the use of one having no insurable interest, the contract was one of wagering and cannot be enforced"; "What results to a contract against public policy is a total and irremediable paralysis, which leaves it without any force or effect whatever, so that it cannot, under any circumstances, be made the basis of a cause of action"); *Cronin v. Vermont Life Ins. Co.*, 40 A. 497, 497 (R.I. 1898) (a purely speculative contract on the life of another is objectionable on the grounds of public policy and such a contract may properly be held to be void); *Mohr v. Prudential Ins. Co.*, 78 A. 554, 557 (R.I. 1911) (jury instruction, that beneficiary could not recover on a policy procured by the beneficiary unless beneficiary had insurable interest in life of the insured, was not erroneous; this was where policy was in incontestable period); *Washington v. Atlanta Life Ins. Co.*, 136 S.W.2d 493 (Tenn. 1940) ("policy taken out on the life of another in whom the named beneficiary who procures the policy to be taken out has no insurable interest is void as a wagering contract and against public policy"); *Crismond's Adm'x v. Jones*, 83 S.E. 1045, 1046 (Va. 1915) ("where the person taking out the policy on the life of another has no insurable interest in such life, and therefore no interest in its continuance, the transaction is a mere speculative or wager contract and is void because it is contrary to public policy"); *Buckner v. Ridgely Protective Ass'n*, 229 P. 313, 316 (Wash. 1924) (dicta, person procuring policy on another must have insurable interest in insured, "else the contract is a mere wager, and void as against public policy"); *Fire Ass'n of Philadelphia v. Ward*, 42 S.E.2d 713, 716 (W. Va. 1947) (general rule is that person taking out the policy must have insurable interest in the subject matter of the insurance, and if such interest is lacking, the policy is void).

Case 3:09-cv-03361-FLW-TJB Document 14 Filed 01/21/10 Page 32 of 48 PageID: 281

As set forth above, an incontestable clause in a policy only applies to legitimate policies, and a policy lacking an insurable interest is void *ab initio* and not a valid or legitimate policy. Furthermore, many of these states have provisions that are nearly identical or very similar to New Jersey's statute containing the "procure or cause to be procured" language.[12] And certain other states have statutes specifically providing that insurance "procured or cause to be procured" is void unless the benefits are payable to the insured, the personal representative, or a person with insurable interest in the insured.[13]

In its Motion, in an attempt to pigeonhole New Jersey law into the minority on this issue, the Defendants place extraordinary significance on *Strawbridge v. New York Life Insurance Company*, 504 F. Supp. 824 (D.N.J. 1980)[14] and *New England Mut. Life Ins. Co. v. Caruso*, 535 N.E.2d 270 (N.Y. 1989), which the Defendants argue would bar Lincoln's claim as incontestable. *See* Motion, pp. 12-19. Indeed, the Defendants argue this Court should apply these cases, decided in 1980 and 1989, respectively, (before the development of STOLI schemes like the instant one) because it wants to take advantage of what it sees as favorable language that

---

[12] ARIZ. REV. STAT. § 20-1104(A); ARK. CODE ANN. § 23-79-103(a)(1)-(2); FLA. STAT. ANN. § 627.404(1); KAN. STAT. ANN. § 40-450(a); KY. REV. STAT. ANN. § 304.14-040(2); La. R.S. 22:901(A); MD. CODE ANN., INS. § 12-201(a)(1)-(2); MONT. CODE ANN. § 33-15-201(1); OR. REV. STAT. § 743.024(1); R.I. GEN. LAWS § 27-4-27(a); VA. CODE ANN. § 38.2-301(A); W. VA. CODE § 33-6-2(a); *see also* NEB. REV. STAT. § 44-704(5) ("…nothing in this section shall be construed to permit a person to procure, effectuate, or cause to be procured or effectuated, directly or by assignment or otherwise…"); 40 PA. STAT. ANN. § 512 ("…no person shall cause to be insured the life of another, unless the beneficiary named in such policy or agreement of life insurance, whether himself or a third person, has an insurable interest in the life of the insured"); WASH. REV. CODE § 48.18.030(1) ("A person may not insure the life or body of another individual unless the benefits under the contract are payable to the individual insured or the individual's personal representative, or to a person having, at the time when the contract was made, an insurable interest in the individual insured.").

[13] *See* ALA. CODE § 27-14-3(g) ("Any personal insurance contract procured, or caused to be procured, upon another individual is void unless the benefits under the contract are payable to the individual insured…"); CAL. INS. CODE § 10110.1(e) ("Any contract of life or disability insurance procured or caused to be procured upon another individual is void unless the person applying for the insurance has an insurable interest in the individual insured at the time of the application"); GA. CODE ANN. § 33-24-3(i) ("Any personal insurance contract procured or caused to be procured upon another individual is void unless the benefits under the contract are payable to the individual insured …").

[14] See supra n. 3. Judge Cooper respectfully distinguishes *Strawbridge* and acknowledges *Ledley* as precedential authority on point.

- 22 -

it believes will countenance its fraudulent STOLI scheme. However, neither one of these cases involved such an elaborate STOLI scheme completely contrary to public policy with rampant fraud and a sinister interest in seeing an insured's life end prematurely. The application of the language cited by Defendants flies directly in the face of established law, public policy and good morals.

Further, the Court in *Strawbridge* did not evaluate the application of the contestable clause in the context of a lack of insurable interest, which is the very essence of a life insurance policy and which requires an analysis separate from that conducted by the *Strawbridge* Court. The Defendants also fail to point out that in the context of a STOLI case, such as the present matter, *Caruso*, and its application, have been questioned by the Court. In fact, no where in its Motion do the Defendants bring to the Court's attention the fact that the United States District Court for the Southern District of New York very recently questioned whether "there is indeed substantial ground for difference of opinion on the application of New York Insurance Law [*i.e.*, *Caruso*] to [STOLI] arrangements of this type" when it comes to whether the expiration of the contestable period should operate to bar an insurable interest challenge. *See Kramer v. Lockwood Pension Servs., Inc.*, 2009 U.S. Dist. LEXIS 85285, at \*109-10 (S.D.N.Y. Sept. 1, 2009).

Furthermore, application of this language cited by Defendants to the instant matter would undermine New Jersey's insurable interest laws and sanction the Defendants' illegal STOLI scheme. Moreover, as pointed out in detail above, the position taken by the Defendants is clearly in the minority. *See* nn. 7, 8 & 9.

Indeed, the great weight of authority holds that a policy procured in violation of insurable interest laws and lacking insurable interest is void *ab initio*. As such, the Policies, including

- 23 -

their incontestability provisions, never came into existence, and the incontestability provisions

cannot be used to preclude a party from raising lack of insurable interest. The longstanding

public policy against wagering contracts takes precedent over contractual incontestability

provisions, and parties cannot contract around such public policy or expect the courts to enforce

such agreements. The conclusion here is that the incontestability provisions in the policies do

not apply to bar Lincoln from asserting that the Policies are void *ab initio* for lack of insurable

interest at inception.[15]

## D.   The Contestable Clause Does Not Provide a Shield for Fraud[16]

To the extent the Court recognizes the contestability period for cases lacking an insurable

interest, New Jersey law does not permit contestability clauses to provide a shield for intentional

fraud. In recognition of New Jersey's very strong public policy aimed at elimination of

insurance fraud, the New Jersey Supreme Court observed that a life insurer can rescind based

upon legal fraud even after expiration of the contestable period. *Ledley v. William Penn Life

Insurance Co.*, 651 A.2d. 92, 96 (N.J. 1995).[17]  Similarly, New Jersey's legislature enacted the

---

[15] In addition, the stranger investor who will profit from the insured's death, should not be allowed to rely on the incontestability provisions of the policies. The contestability provisions do not protect those who are strangers to the contract. That strangers should not be protected is not a new or novel idea. *See Prudential Ins. Co. of Am. v. Mohr*, 185 F. 936 (C.C.D.R.I. 1911) ("[T]he incontestable clause inures only to the benefit of the assured and his beneficiary, and there is no reason why it should be invoked by a third person, a stranger to the contract; on the contrary, the special reasons for upholding the validity of a clause of this character are confined to those standing in the relation of insured or beneficiary."); *see also People v. Alexander*, 171 N.Y.S. 881, 887 (N.Y. App. Div. 1918) (public policy requires that incontestability provisions of a policy "be limited to legitimate policies actually taken out by the insured for the protection of his named beneficiary, and should be deemed intended to apply to a policy fraudulently taken out by and for the benefit of others, as in the case at bar"). Here, the underlying investors are strangers to the contract and cannot rely on the provisions therein.

[16] *See supra* n. 3. As previously stated, Judge Cooper specifically denied a motion to dismiss in *Ellman* on this very issue, involving facts nearly identical to the instant matter, specifically stating that "the New Jersey Supreme Court stated in *Ledley*, fraud in the application will overcome a defense of incontestability … in New Jersey."

[17] Similarly, New York also has a fraud exception for contesting life insurance policies. *See United States Life Insurance Co. in the City of New York v Grunhut*, 2007 N.Y. Misc. LEXIS 9114 (N.Y. Sup. Ct. Aug. 24, 2007) (holding that "for the insurer to be entitled to rescind [a] policy *ab initio*, after it had been in existence for two years

(Continued)

Fraud Act "to confront aggressively the problem of insurance fraud" by, among other things,

facilitating its detection and "requiring the restitution of fraudulently obtained insurance

benefits." N.J.S.A. 17:33A-2. The Supreme Court of New Jersey has recognized that

"[i]nsurance fraud is a problem of massive proportions that currently results in substantial and

unnecessary costs to the general public in the form of increased rates." *Merin v. Maglaki*, 599

A.2d. 1256, 1259 (N.J. 1992). As such, the Court has held that "insurers should compensate

victims to the extent 'that compensation will not condone and encourage intentionally wrongful

conduct[,]'" and if the Court was "to permit a dishonest insured to recover, insurers would

include the cost of that risk in premiums charged to honest insureds." *Paul Revere v. Haas*, 644

A.2d. 1098, 1108 (N.J. 1994).

In *Ledley*, the Supreme Court of New Jersey stated that "even after the expiration of the

contestability period, [a life] insurer may deny a claim if the insured committed fraud in the

policy application. *Ledley*, 651 A.2d at 95 (N.J. 1995) (citing *Haas*, 644 A.2d 1098 (N.J. 1994)).

*See also Tulipano*, 154 A.2d at 650 (N.J. Super. Ct. App. Div. 1959) ("an insurance policy

violative of public policy or good morals cannot be enforced simply because the incontestability

clause has run"). The Defendants may erroneously argue that *Ledley's* reliance on *Haas* renders

this language impertinent. Such an argument fails to read *Haas* in context. In *Haas*, a disability

insurer had a choice of applying two different contestable clauses under N.J.S.A. 17B:26-5; one

of which would have excluded fraudulent misstatements from operation of the contestable clause

and one that would have allowed the insurer to void the policy for a fraudulent misstatement at

_____

(Continued)

during the insured's lifetime, it must identify a material misrepresentation in the application that was intended to
defraud the insurer); *See also* Insurance Law § 3105(b), § 3216(d)(1)(B)(I); *Interested Underwriters at Lloyd's v
H.D.I. III Assoc.*, 213 A.D.2d 246, 247, 623 N.Y.S.2d 871 (1995); *Process Plants Corp. v Beneficial Nat'l Life Ins.
Co.*, 385 N.Y.S.2d 308 (N.Y. 1976).

any time before or after the contestable period. *Haas*, 644 A.2d. 1098 at 1102-03 (N.J. 1994). The insurer selected the provision that extended the contestable period based on periods of disability of the insured, rather than the provision that would allow for rescission at any time for fraudulent misrepresentations. *Id.* The Court concluded that because the insurer could have, but did not, choose the option that would have specifically excluded fraudulent misstatements, it thereafter could not seek to rescind the policy on the grounds of fraudulent misstatements in the application. *Id.*

However, while the statute relied upon in *Haas* affords disability insurers the option to include an "except for fraud" clause in policies, life insurers do not have that option. Therefore, the Supreme Court's acknowledgement in *Ledley*, a case concerning a life insurance policy that an insurer can rescind based on fraud in the policy application after the contestable period may only be interpreted as establishing an exception to incontestability in the case of life insurance. Any other interpretation would condone an end-run around the public policy observed by both the legislature and the Court.

New Jersey's strong public policy abhors Defendants' attempt to utilize the contestable clause as a shield against intentional fraud. To apply the contestable clause in this fashion, would be to promote the fraudulent abuse of New Jersey's public policy and statutory law. Given the deplorable nature of the fraud in this case, Defendants should not be permitted to invoke the contestable clause to avoid responsibility for their conduct.

## V.   LINCOLN FAILED TO PLEAD FRAUD WITH PARTICULARITY

Rule 9(b) requires that a party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In meeting the particularity requirements of Rule 9(b), a plaintiff must plead "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged,

- 26 -

and to safeguard defendants against spurious charges of immoral and fraudulent behavior."

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). In

addition, Plaintiffs must allege "who made a misrepresentation to whom and the general content

of the misrepresentation." *Lum v. Bank of America,* 361 F.3d 217, 223-24 (3d Cir. 2004).

However, Plaintiffs "need not ... plead the date, place or time of the fraud, so long as they use an

alternative means of injecting precision and some measure of substantiation into their allegations

of fraud." *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir. 1998); *see In*

*re Rockefeller Ctr. Properties, Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002) ("Although Rule

9(b) falls short of requiring every material detail of the fraud such as date, location, and time,

plaintiffs must use alternative means of injecting precision and some measure of substantiation

into their allegations of fraud").

Understanding that certain aspects of an alleged fraud may have been concealed by a

defendant, courts apply Rule 9(b) "with some flexibility." *Rolo,* 155 F.3d at 658 (3d Cir. 1998).

The Third Circuit held that in applying Rule 9(b), courts should be "sensitive" to situations in

which "sophisticated defrauders" may "successfully conceal the details of their fraud." *In re*

*Rockefeller,* 311 F.3d at 216 (3d Cir. 2002). Where it can be shown that the requisite factual

information is peculiarly within the defendant's knowledge or control, the rigid requirements of

Rule 9(b) may be relaxed. *Ramirez v. STi Prepaid LLC,* 644 F. Supp. 2d 496, 502 (D.N.J.

2009). In fact, "under the Third Circuit's liberal formulation of the rule, plaintiff need only set

forth the general circumstances of the fraud." *Urbach v. Sayles,* 1991 WL 236183, *6 (D.N.J.

Sept. 4, 1991); *See Seville,* 742 F.2d at 791 (3d Cir. 1984).

In *American General Life Ins. Co. v. Altman Family Ins. Trust ex rel. Altman,* 2009 WL

5214027 (D.N.J. Dec. 22, 2009), a case nearly factually identical to this case and argued by the

same law firm representing the Defendants here, this Court concluded that the plaintiff had

"alleged enough facts to place the proposed defendant on notice of the claims against them and

have sufficiently alleged the material misrepresentations. The Court said:

> As to the fraud, Plaintiff has plead that the Proposed Defendants [] "purposefully
> misrepresented a proposed defendant's income, net worth and the amount of other
> life insurance coverage in-force or being sought on [proposed insured's] life to
> multiple life insurance companies ...." Plaintiff has also plead that [proposed
> insured] did not qualify for the life insurance coverage sought, that Plaintiff did
> not know this fact and that the policy was obtained with the intent to profit from
> the sale of the policies or upon [proposed insured]'s death. Finally, Plaintiff plead
> that proposed defendants were responsible for providing the alleged
> misrepresentation to Plaintiff and that proposed defendants actually submitted
> those applications. As such, Plaintiff has alleged enough facts to place the
> Proposed Defendants on notice of the claims against them and have sufficiently
> alleged which Defendant made the material misrepresentations.

*Altman*,  2009 WL 5214027, at *5 (D.N.J. Dec. 22, 2009).

In this case, Lincoln has particularly plead facts to support fraud utilizing the same facts

that were sufficient in *Altman* and even included additional facts as well. In the "Fraudulent

Procurement of the Schwarz Policies" section of the Amended Complaint, Lincoln clearly and

specifically describes, with sufficient particularity, the fraudulent activities of the Defendants.

By way of example, Lincoln specifically pleads in the Amended Complaint:

- Ms. Schwarz, the Trust, Yoel Schwarz and Ernest Schwarz as Trustees
  of the Trust, and Abraham Weinstock initiated a scheme to obtain life
  insurance policies on the life of Ms. Schwarz for the purpose of
  transferring the Policies, or an interest in the Policies, to individuals
  without an insurable interest in Ms. Schwarz's life for a profit. Am.
  Compl. ¶ 19.

- In furtherance of this scheme, on or about May 3, 2006, the Applicants
  signed two life insurance applications on the life of Ms. Schwarz in the
  amounts of $2,500,000 and $2,000,000 while in the state of New Jersey.
  The Applications identified the Trust, located in Lakewood, New Jersey,
  as the proposed owner and sole beneficiary of the proposed policies.
  Am. Compl. ¶¶ 22, 23.

- The Applicants fraudulently represented that Ms. Schwarz had total assets and a net worth of $10,300,000, when in fact, Ms. Schwarz lived with her adult son in a housing project for low-income families, did not have a savings or checking account and did not own any real estate, vehicles or have valuable personal belongings. Am. Compl. ¶¶ 25, 45, 46.

- Further, the Applicants fraudulently represented that Ms. Schwarz had an annual earned income of $433,000, despite the fact that Ms. Schwarz had been unemployed for the past thirty years, did not have any income except for Social Security payments and did not receive a personal or widow's pension. Am. Compl. ¶¶ 25, 46.

- The Applicants also misrepresented the existence of additional applications for life insurance policies pending with other life insurance carriers. The Applicants stated that Ms. Schwarz had "[a]pplied to AIG but the JP product is a better one, the client says." Am. Compl. ¶ 26. The Applicants did not provide any additional information regarding the existence of other applications. However, several applications with multiple life insurance companies, including Metlife and AIG for large face amount policies had been submitted. Am. Compl. ¶ 48.

- Similarly, the Applicants misrepresented that they had not been involved in any discussions about the possible sale or assignment of the Policies to a life settlement, viatical or other secondary market provider. Am. Compl. ¶ 27. Yet, the Applicants expected and understood that the right to receive the death benefits payable under the Policies would belong to a third party having no insurable interest in Ms. Schwarz's life and who would have the financial ability to make all premium payments for the Policies. Am. Compl. ¶ 51.

- The Applicants fraudulently misrepresented that they were procuring the Policies for legitimate life insurance needs, when they were actually involved in a STOLI scheme to illegally wager on the life of Ms. Schwarz for a substantial profit. Am. Compl. ¶ 2.

- Finally, the Applicants fraudulently signed the "Agreement and Acknowledgement" section verifying that they provided truthful, accurate and honest information on the Application regarding the insurability of Ms. Schwarz. Am. Compl. ¶ 30.

These examples of the fraudulent misrepresentations taken from the Amended Complaint

were material and induced Lincoln to issue the Policies, which it would not have otherwise issued,

to their financial and reputational detriment. Am. Compl. ¶ 54.

- 29 -

Lincoln has certainly pled "the circumstances of the alleged fraud in order to place the Defendants on notice of the precise misconduct with which they are charged." *Seville,* 742 F.2d at 791 (3d Cir. 1984). Lincoln has satisfied the requirements of Rule 9(b) and has exceeded the level of particularity required by this Court in the factually similar case of *Altman.* 2009 WL 5214027, at *5 (D.N.J. Dec. 22, 2009). Given the fraudulent behavior of the Defendants, and the Court's understanding of "situations in which sophisticated defrauders may [attempt to] conceal the details of their fraud," it is evident that Lincoln has pled fraud with sufficient particularity. *Rockefeller Ctr.,* 311 F.3d at 216 (3d Cir. 2002).

## VI.   THE POLICIES LACK AN INSURABLE INTEREST

### A.   The Trust Does Not Have an Insurable Interest in the Life of Ms. Schwarz

While the Defendants attempt to cloak this STOLI transaction with an appearance of legitimacy, a closer look reveals the absurdity of accepting the Defendants' contentions. Accepting the Defendants' contentions would make it legally permissible for an insured to collaborate with others to fraudulently procure a life insurance policy for the sole purpose of selling the beneficial interest in the policy to stranger investors lacking an insurable interest in the insured. This Court should not sanction such action and should find that Lincoln has properly asserted a claim that the Policies are void *ab initio* for lack of insurable interest.

The Defendants argue that simply because the Policies were issued to a trust purportedly established by Valeria Schwarz and her son and grandson, the Policies are supported by a valid insurable interest. *See* Motion to Dismiss, p. 26. However, just because a trust was established in connection with the procurement of the Policies does not establish a viable insurable interest

- 30 -

in the Policy.[18] The Trust is not what it purports to be – its creation is nothing more than another layer in the attempt to create an illusion of legitimacy to the Policies.

The Trust's argument in this regard fails in light of the evidence of STOLI surrounding this transaction and the scheme in which the insured and the other parties with whom the Defendants worked in order to procure the Policies for the purposes of transferring the Policies' beneficial interest. As noted by other courts, merely because an insurable interest may appear to exist at policy issuance based on a beneficiary designation, that "*does not end the inquiry*." *See Sun Life Assurance Company v. Moran*, 2009 U.S. Dist. LEXIS 76289, at *11 (D. Ariz. Aug. 11 2009) (emphasis added). Rather, the insurable interest requirement is "violated when the insured is working together with an assignee to acquire an insurance policy where the circumstances indicate that the assignee is the real purchaser of the policy." *See id.* This Court has stated that "insureds begin to run afoul of the insurable interest requirement … when they intend at the time of the *policy's issuance*, to profit by transferring the policy to a stranger with no insurable interest at the expiration of the contestability period." *Calhoun*, 596 F. Supp. 2d at 889 (D.N.J. 2009) (emphasis added).

Here, Lincoln alleges the purchase of the Policies was an impermissible straw purchase because Ms. Schwarz (and those with whom she was collaborating) planned or intended to sell the beneficial interest in the Policies to third-party investors from the outset. *See* Am. Compl. ¶¶ 33, 34.

---

[18] The Trust's attempts to make legitimate an otherwise fraudulent transaction by relying on the use of an insurance trust fail further considering that the Trust was created at the direction of third parties and used to conceal the lack of an insurable interest in the Policy. *See* Am. Compl. ¶ 38, 40. The legitimacy of this type of trust is at issue and certainly does not create an insurable interest in the Policy. *See* 76 Am. Jur. 2d *Trusts* § 20 (2009) (Generally, where the object of a trust is to circumvent a statutory prohibition or defeat a public policy, the trust is void and of no effect, and one who wishes to dispose of his or her property through the device of a trust must do so subject to considerations of policy, and a person cannot force the courts to sanction his or her scheme of disposition if it is inimical to the interests of the state. *It follows that criminality of purpose ordinarily voids a trust* (emphasis added)).

Moreover, New Jersey law provides that "no person shall *procure or cause to be procured* any insurance contract upon the life, health or bodily safety of another individual unless the benefits under that contract are payable to the individual insured or his personal representative, or to a person having, at the time when that contract was made, an insurable interest in the individual insured." N.J.S.A. 17B:24-1.1(b). The inclusion of both the phrase "procured" and "cause to be procured" indicates two concerns regarding stranger-originated policies. The first concern, demonstrated by the definition's inclusion of the term "procured," relates to the direct purchase of a policy by a third-party or stranger investor on the life of the insured. The second concern, demonstrated by the definition's inclusion of the phrase "caused to be procured," relates to when a third-party lacking an insurable interest engages in a straw purchase of a life insurance policy by having the policy procured by a person appearing to have an insurable interest.

Accordingly, an insurable interest does not exist where a life insurance policy is "caused to be procured upon another individual" unless the person causing the policy to be procured has an insurable interest in the life of the insured.[19] *See Calhoun* 596 F. Supp. 2d at 889 (D.N.J. 2009) (maintaining that the insurable interest requirement for a life insurance policy begins to run afoul when there is an intention at the time of issuance to profit by transferring a life insurance policy to a stranger without an insurable interest in the insured). Here, Lincoln alleges the purchase of the Policies was just such an impermissible purchase because it was procured, or

---

[19] Simply, there is no insurable interest if there is no good faith, genuine volition or initiative on the part of the insured to procure the policy for the benefit of a family member, loved one or business partner. *Life Product Clearing, LLC v. Angel*, 530 F. Supp.2d 646, 653 (S.D.N.Y. 2008) ("Only one who obtains a life insurance policy on himself 'on his own initiative' and in good faith – that is, with a genuine intent to obtain insurance protection for a family member, loved one, or business partner, rather than an intent to disguise what would otherwise be a gambling transaction by a stranger on his life – may freely assign the policy to one who does not have an insurable interest in him.").

caused to be procured, by third-party stranger investors with no insurable interest in Ms.

Schwarz's continued life, health and bodily safety. Indeed, Ms. Schwarz (and those with whom

she was collaborating) planned or intended to sell the beneficial interest in the Policies to third-

party investors from the outset and did not intend or have the financial means to make premium

payments on the Policies. The Policies were not obtained by Ms. Schwarz in good faith for the

protection of a family member, loved one or business partner. *See* Am. Compl. ¶¶ 50, 51. Thus,

the Policy was applied for and issued without an insurable interest because third-party investors

with no insurable interest in Ms. Schwarz "caused [the Policies] to be procured." *See* N.J.S.A.

17B:24-1.1(b); New York Insurance Law § 3205.

## B.     Ms. Schwarz Was Not the Party Who Procured the Policy and Therefore She Had No Insurable Interest to Assign

The Defendants similarly argue that because Ms. Schwarz had an insurable interest in her

own life, she was entitled to procure the Policies and name the Trust as the beneficiary.

According to the Defendants, because Ms. Schwarz took out the Policies herself, on her own life,

the Policies are supported by an insurable interest which can be assigned to the Trust. *See* the

Motion at pp. 26-27. But as discussed, *supra*, that is not the case.

The Policies are unsupported by an insurable interest because Ms. Schwarz did not take

out the Policies. To the contrary, as alleged by Lincoln, Ms. Schwarz was solicited by STOLI

promoters to participate in a scheme wherein she would serve simply as a figurehead. *See* Am.

Compl., ¶ 2. It was the intention of those STOLI promoters to procure life insurance policies for

sale to stranger investors who lacked an insurable interest in Ms. Schwarz's life. *See id.*

Accepting these allegations as true, it is clear that the Policies are not supported by an insurable

interest because they were not procured in good faith by Ms. Schwarz; but rather, they were

procured by persons having no insurable interest in her life at the time of the Policies issuance.

*See* N.J.S.A. 17B:24-1.1(b); New York Insurance Law § 3205.[20]  As such, the Policies are unsupported by an insurable interest and the Defendants' Motion must be denied.

## VII.  LINCOLN FAILED TO PROPERLY PLEAD THAT JURISDICTION RESTS WITH THIS COURT

Lincoln did not fail to properly allege the Trust's citizenship.  Defendants conclude their Motion to Dismiss with a frivolous and trifling argument that further illustrates their attempt to conceal the scheme to defraud Lincoln.  "Jurisdiction cannot be based on a defendant's interpretation of a plaintiff's interpretation of the defendant's citizenship.  Rather, both the plaintiff and defendant have an obligation, pursuant to Federal Civil Procedure Rule 11 and New Jersey Professional Conduct Rule 3.3, to proceed with candor to the Court.  [Defendant] cannot hide its citizenship, and Plaintiffs cannot ask the Court to ignore it." *First Colonial Ins. Co. v. Custom Flooring, Inc.*,  2007 WL 1175759, at *3 (D.N.J. April 17, 2007).

The Applications for life insurance name the Valeria Schwarz Irrevocable Life Trust as the beneficiary of the Policies.  Am. Compl. ¶ 23.  The Trust does not clearly define its beneficiary.[21]  The fact that the Trust does not define its beneficiary, and the Applicants and/or Defendants did not inform Lincoln of the Trust's beneficiary, makes their argument that Lincoln

---

[20]  The Trust attempts to utilize a slight of hand in its statutory interpretation by claiming under N.J.S.A. 17B:24-1.1(b) and New York Insurance Law § 3205 that Ms. Schwarz was the party who procured the Policy and, therefore, she was permitted to name "any person" as the beneficiary.  As such, according to the Trust, there is no concern regarding wagering policies or lack of insurable interest. *See* the Motion, p. 26.  However, as stated in the Complaint and above, Ms. Schwarz did not procure the Policies.  To the contrary, it was STOLI promoters who solicited Ms. Schwarz in order to use her as a means to procure the Policies. *See* Am. Compl., ¶ 2.  Allowing such a scheme runs directly contrary to New Jersey and New York law prohibiting wagering contracts. *See Calhoun*, 596 F.Supp.2d at 889 (D.N.J. 2009); *Grunhut*, 2007 N.Y. Misc. LEXIS 9114, at *13 (N.Y. Sup. Ct. Aug. 24, 2007).

[21]  The legitimacy of this type of trust is at issue and certainly does not create an insurable interest in the Policy. *See* 76 Am. Jur. 2d *Trusts* § 20 (2009) (Generally, where the object of a trust is to circumvent a statutory prohibition or defeat a public policy, the trust is void and of no effect, and one who wishes to dispose of his or her property through the device of a trust must do so subject to considerations of policy, and a person cannot force the courts to sanction his or her scheme of disposition if it is inimical to the interests of the state. *It follows that criminality of purpose ordinarily voids a trust* (emphasis added)).

failed to properly plead jurisdiction disingenuous.[22]  Defendants are the sole purveyor of this
information and intentionally withheld it from Lincoln.

The reason the beneficiary is not clearly defined in the Trust is further evidence of the
Defendants' fraudulent scheme to shield Lincoln from discovering the Policies lack of insurable
interest.  To that end, naming the Trust as the beneficiary of the Policies, and not clearly defining
the beneficiary of the Trust, allows the Defendants to transfer the beneficial interest in the
Policies, via the Trust, without having to make any disclosures to Lincoln.  This is important
because Lincoln requires an insured to provide written authorization for any changes made to the
beneficiary designation of a life insurance policy.  As such, STOLI fruadsters attempt to

---

[22]  The practice of withholding the identity of the Trust's beneficiary is part and parcel of the STOLI scheme, which
appears to have also been perpetrated in other instances to conceal a lack of insurable interest in the insured.  In a
factually similar case defended by the same defense firm as this case, plaintiff demanded a copy of the Trust
documents in order to verify that the Trust had an insurable interest in the insured and was denied access to such
documents.  Plaintiff alleged in its complaint:

     51.     On September 3, 2008, American General wrote to Lipsius requesting a copy of the Trust
documents.

     52.     On September 25, 2008, an attorney from Lipsius' office, David BenHaim, Esq. (BenHaim), wrote
to American General challenging American General's right to the document, refusing to produce it, and demanding
immediate payment of the proceeds.

     53.     On October 9, 2008, American General advised Lipsius and BenHaim that the document was
necessary to confirm that the owner and beneficiaries of the Policy possessed the requisite insurable interest in the
life of Ellman at the time that the Policy was issued.

     54.     On October 28, 2008, Lipsius advised American General that the Trust refused to provide the
Trust documents for American General's review.

     55.     Upon information and belief, the reason for the Trust's refusal to produce the Trust documents is
that such documents reveal the lack of any insurable interest in the life of Ellman on the part of the Trust.

Complaint at 10-11, *American General Life Ins. Co. v. Ellman Savings Irrevocable Trust*, No. 08-cv-05364 (D.N.J.
2008) (No. 1).

circumvent this requirement by naming a trust as the beneficiary of the policy, and then subsequently selling the beneficial interest in the trust.  This end-around does not leave a paper trail for the insurer to identify STOLI schemes and policies lacking a valid insurable interest.

Further, Defendants are quick to argue that Lincoln's pleadings are deficient for failing to name the beneficiary of the Trust, yet nowhere in their Motion do they identify the beneficiary of the Trust.  There are two explanations for this omission.  First, the "unnamed" beneficiary does not affect diversity, causing their jurisdictional argument to immediately fail.  The second explanation is that Defendants do not name the beneficiary of the Trust in order to keep Pandora's box sealed and not reveal that the Policies lack an insurable interest.  The concern is not that opening Pandora's box will sever diversity, or Defendants would have so stated, but rather that more layers of Defendants' STOLI scheme would be disclosed and its illegitimacy would be further revealed.[23]

---

[23] In accordance with the principles of equity, if the Court would permit limited discovery to decipher the intended beneficiary of the Trust and the owner/holder of the beneficial interest in the Trust, Lincoln would gladly amend the Amended Complaint to identify the beneficiary and owner/holder of the beneficial interest in the Trust.

## CONCLUSION

For the foregoing reasons, Plaintiff The Lincoln National Life Insurance Company respectfully requests that the Court deny the Defendants' Motion to Dismiss and direct Defendants to answer Plaintiff's Amended Complaint.

DRINKER BIDDLE & REATH LLP

By: _____
James S. Bainbridge
Lawrence R. Scheetz, Jr.
500 Campus Drive
Florham Park, NJ  07932-1047
Telephone:  (973) 549-7000
Fax:  (973) 360-9831
james.bainbridge@dbr.com
lawrence.scheetz@dbr.com

*Attorneys for Plaintiff*
*The Lincoln National Life Insurance*
*Company*

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that, on the date set forth below, I electronically filed a copy of the

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss the Amended Complaint

using the CM/ECF system, which will send notification of such filings to CM/ECF participants.

DRINKER BIDDLE & REATH LLP

Dated:  January 21, 2010

By: _____
James S. Bainbridge
Lawrence R. Scheetz, Jr.
500 Campus Drive
Florham Park, NJ  07932-1047
Telephone:  (973) 549-7000
Fax:  (973) 360-9831
james.bainbridge@dbr.com
lawrence.scheetz@dbr.com

*Attorneys for Plaintiff*
*The Lincoln National Life Insurance*
*Company*