## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | Case No. 3:09-cv-03361(FLW)(TJB) |
| Plaintiff, | |
| v. | |
| YOEL SCHWARZ AND ERNST SCHWARZ, AS TRUSTEES OF THE VALERIA SCHWARZ IRREVOCABLE LIFE INSURANCE TRUST, | |
| Defendants. | |

## PLAINTIFF THE LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COUNTERCLAIMS OF DEFENDANTS YOEL SCHWARZ AND ERNST SCHWARZ, AS TRUSTEES OF THE VALERIA SCHWARZ IRREVOCABLE LIFE INSURANCE TRUST

**DRINKER BIDDLE & REATH LLP**
James S. Bainbridge (02083-1998)
Lawrence R. Scheetz, Jr. (01864-2007)
105 College Road East
Princeton, NJ 08542-0627
(609) 716-6500 (phone)
(609) 799-7000 (facsimile)

*Attorneys for Plaintiff*
*The Lincoln National Life Insurance Company*

# TABLE OF CONTENTS

**Page**

I.     Nature and Stage of Proceedings ........................................................................ 1

II.    Summary of Argument ..................................................................................... 2

III.   Statement of Facts ........................................................................................... 2

IV.   Standard of Review Under Rule 12(b)(6) ......................................................... 5

V.    Argument ......................................................................................................... 6

       A.     Defendants Have Failed to Sufficiently Plead that Lincoln Breached the Insurance Contract ................................................................................ 6

       B.     Defendants Have Failed to Sufficiently Plead That Lincoln Committed Fraud or Acted in Bad Faith................................................................... 8

            1.     Defendants Have Failed to State a Claim Against Lincoln for Fraud ............................................................................................... 8

            2.     Defendants Have Failed to State a Claim Against Lincoln for Bad Faith ............................................................................................. 11

       C.     Defendants Fail to Establish the Requisite Elements of a Cause of Action Under New York General Business Law Section 349 .......................... 14

            1.     Defendants' Claim is Entirely Devoid of Any Meaningful Allegation of Consumer-Related Conduct on the Part of Lincoln........... 14

            2.     Defendants' Claim Fails to Set Forth Any Deceptive Act or Practice on the Part of Lincoln................................................................. 17

VI.   Conclusion ..................................................................................................... 18

## Cases

*Allstate Indemnity Company v. Murphy,*
    2008 WL 4415580 (M.D. Pa. Sept. 25, 2008) ........................................................... 12

*Allstate Insurance Company v. Kenney,*
    2003 WL 22345683 (E.D. Pa. Oct. 8, 2003) ............................................................ 12

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ........................................................................... 5, 6, 8, 9

*AXA Corporate Solutions v. Underwriters Reinsurance Company,*
    2004 WL 2534386 (N.D. Ill. Nov. 9, 2004) ................................................................. 8

*Babb v. Superior Court,*
    479 P.2d 379 (Cal. 1971) ............................................................................ 7

*Bell Atlantic Corporation v. Twombly,*
    550 U.S. 544 (2007) ........................................................................... 5, 8, 9, 11

*Cay Divers, Incorporated v. Raven,*
    812 F.2d 866 (3d Cir. 1987) ......................................................................... 11

*Coastal Aviation, Incorporated v. Commander Aircraft Company,*
    937 F. Supp. 1051 (S.D.N.Y. 1996) ................................................................. 6, 7

*Denton v. Hernandez,*
    504 U.S. 25 (1992) ............................................................................... 16

*DePasquale v. Allstate Insurance Company,*
    179 F. Supp. 2d 51 (E.D.N.Y. 2002) ................................................................. 15

*Dewey v. Volkswagen AG,*
    558 F. Supp. 2d 505 (D.N.J. 2008) .................................................................. 10

*Eurycleia Partners, LP v. Seward & Kissel, LLP,*
    910 N.E.2d 976 (N.Y. 2009) ......................................................................... 10

*Fekete v. GA Insurance Company of New York,*
    719 N.Y.S.2d 52 (N.Y. App. Div. 2001) ............................................................. 15

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009) .......................................................................... 6

*Gallerstein v. Berkshire Life Insurance Company of America,*
    2006 WL 2594862 (D.N.J. Sept. 11, 2006) ........................................................... 10

*In re Burlington Coat Factory Securities Litigation,*
   114 F.3d 1410 (3d Cir. 1997)................................................................. 5, 9, 11

*Ketzner v. John Hancock Mutual Life Insurance Company,*
   2004 WL 2913945 (3d Cir. Dec. 17, 2004) ........................................... 12

*Korn v. First UNUM Life Insurance Company,*
   717 N.Y.S.2d 606 (N.Y. App. Div. 2000) .............................................. 15

*Lava Trading Inc. v. Hartford Fire Insurance Company,*
   326 F. Supp. 2d 434 (S.D.N.Y. 2004)................................................. 16, 17

*Lincoln National Life Insurance Company v. Calhoun,*
   596 F. Supp. 2d. 882 (D.N.J. 2009) ...................................................... 6

*Little Souls Incorporated  v. State Auto Mutual Insurance Company,*
   2004 WL 503538 (E.D. Pa. 2004) ........................................................ 12

*Lomaglio Association, Inc., v. LBK Marketing Corporation,*
   892 F. Supp. 89 (S.D.N.Y. 1995) ......................................................... 10

*Mallon v. Prudential Property & Casualty Insurance Company,*
   688 F. Supp. 997 (D.N.J. 1988) ............................................................ 9

*Maniscalco v. Brother International Corporation (USA),*
   627 F. Supp. 2d 494 (D.N.J. 2009) ........................................................ 9

*New York University v. Continental Insurance Company,*
   662 N.E.2d 763 (N.Y. 1995)......................................................... 12, 13, 15

*Oswego Laborers' Local 14 Pension Fund v. Marine Midland Bank,*
   85 N.Y.2d 20, 25 (1995) ................................................................... 14, 15

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008)................................................................. 5

*Pickett v. Lloyds,*
   621 A.2d 445 (N.J. 1993)................................................................. 12, 13

*Principal Life Insurance Company v. DeRose,*
   2009 WL 4061366 (M.D. Pa. Nov. 23, 2009) ....................................... 7, 8

*Principal Life Insurance Company v. Lawrence Rucker 2007 Insurance Trust,*
   674 F. Supp. 2d 562 (D. Del. 2009)...................................................... 7

*Reddy v. MedQuist, Incorporated,*
   2009 WL 250050 (D.N.J. Jan. 29, 2009) ................................................................ 6

*Richardson v. Division of High Schools of New York City Board of Education,*
   1990 WL 124346 (S.D.N.Y. Aug. 24, 1990) ........................................................ 16

*Rite Aid Corporation v. Liberty Mutual Fire Insurance Company,*
   414 F. Supp. 2d 508 (M.D. Pa. 2005) ................................................................ 11

*Security Mutual Life Insurance Company of New York v. DiPasquale,*
   724 N.Y.S.2d 594 (N.Y. App. Div. 2001) .......................................................... 15

*Seville Industrial Machinery Corporation v. Southmost Machinery Corporation,*
   742 F.2d 786, 791 (3d Cir. 1984) ........................................................................ 9

*Shapiro v. Barnea,*
   2006 WL 3780647 (D.N.J. Dec. 21, 2006) ........................................................ 10

*Stutman v. Chemical Bank,*
   95 N.Y.2d 24 (2000) ................................................................................... 14, 17

*Tarsio v. The Provident Insurance Company,*
   108 F. Supp. 2d 397 (D.N.J. 2000) .................................................................... 13

*Victoria Insurance Company v. Li He Ren,*
   2008 WL 2371850 (E.D. Pa. June 9, 2008) ................................................. 11, 12

*Wiener v. Unumprovident Corporation,*
   202 F. Supp. 2d 116 (S.D.N.Y. 2002) ................................................................ 12

### Rules

Fed. R. Civ. P. 8 ................................................................................................ 9, 11

Fed. R. Civ. P. 9(b) .......................................................................................... 9, 11

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 5

### Statutes

28 U.S.C. § 2201 ............................................................................................... 7, 11

New York General Business Law § 349 ......................................................... 14, 18

I.      **Nature and Stage of Proceedings**

Despite Defendants' Yoel and Ernst Schwarz, as trustees of the Valeria Schwarz

Irrevocable Life Insurance Trust ("Trust" or "Defendants") efforts to convince the Court

otherwise, this litigation is about two policies of life insurance issued on the life of Valeria

Schwarz ("Policies") that Plaintiff The Lincoln National Life Insurance Company ("Lincoln")

alleges are illegal wagering contracts for the benefit of individuals without an insurable interest

in Ms. Schwarz's life.  As such, Lincoln filed this action for declaratory judgment because it

believes that the Policies were fraudulently procured through a stranger originated life insurance

("STOLI") scheme.  Lincoln maintains that the Policies were intended for individuals with no

legally cognizable interest in Ms. Schwarz's life, but who sought to profit from her early, even

untimely, death.  In furtherance of this fraudulent, reprehensible plan, Defendants made

numerous material misrepresentations and/or omissions in applying for the Policies.  As such,

Lincoln filed a Complaint and, shortly thereafter, an Amended Complaint seeking a declaration

that the Policies are void due to a lack of insurable interest at inception, fraud, and violation of

the New Jersey Insurance Fraud Prevention Act ("IFPA").

In response to the Amended Complaint, Defendants filed a motion to dismiss claiming

that they had an insurable interest in the Policies at inception, the Policies were incontestable

after two years, and that Lincoln failed to plead both common law fraud and fraud under the

IFPA with particularity.  The motion to dismiss was denied in its entirety.  Defendants then

answered the Amended Complaint, asserted substantive defenses, and brought counterclaims

against Lincoln for (1) breach of contract; (2) fraud/bad faith; and (3) violation of the New York

General Business Law § 349.  Lincoln now moves to dismiss the Trust's counterclaims.

1

## II.     Summary of Argument

The counterclaims asserted by Defendants suffer from several fatal deficiencies and should be dismissed.  First, Defendants' claim that Lincoln breached the insurance contract, by not immediately paying the claim and commencing this declaratory judgment action, fails to establish the basic elements of a breach of contract claim.  Lincoln has not refused to honor the contract, but rather has sought the assistance of the Court to determine the validity of the Policies.  Defendants' second claim for fraud/bad faith fails to satisfy the minimum pleading requirements of Rule 8, the heightened pleading requirements of Rule 9(b), and the elements required to support each claim.  Defendants third claim should also be dismissed because Defendants have failed to establish that an "act or practice" of Lincoln was consumer oriented or that such "act or practice" was misleading and resulted in damages to the Defendants.  For the reasons set forth more fully below, Defendants' counterclaims should be dismissed in their entirety.

## III.    Statement of Facts

Beginning in approximately May, 2006, the Valeria Schwarz Irrevocable Life Insurance Trust and others, executed a plan, scheme, or design to procure insurance on the life of Valeria Schwarz for the benefit of stranger investors.  *See* Lincoln's Amended Complaint ("Am. Compl.") ¶ 2.  This insurance was not sought by Ms. Schwarz to meet legitimate insurance needs.  *Id.*  In fact, it was not even sought by Ms. Schwarz.  *Id.*  Instead, it was sought by, and intended for, persons who were complete strangers to Ms. Schwarz and had no legally cognizable interest in Ms. Schwarz's life.  *Id.*  These STOLI policies generally, and the Policies in particular, are illegal wagering contracts.  *Id.*  They lack an insurable interest at inception and thus are void *ab initio*.  *Id.*

2

Moreover, the Policies were not merely illegal wagering contracts, but were the product of fraud. Am. Compl. ¶ 3. Ms. Schwarz, Yoel Schwarz, Ernst Schwarz and Abraham Weinstock, the broker of the Policies (collectively the "Applicants"), made numerous fraudulent and material misrepresentations and/or omissions in the applications regarding, *inter alia*, Ms. Schwarz's finances, the existence of other life insurance and/or applications, and the true purpose behind the procurement of the Policies. *Id.* Had Lincoln known of the Applicants' misrepresentation, it would have declined to issue the Policies. *Id.*

However, in an effort to conceal this information from Lincoln, Defendants and/or others acting on their behalf, put into action a plan, effectuated through the use of New Jersey locations, to obtain two life insurance policies on the life of Valeria Schwarz for the purpose of transferring them, or an interest in them, to strangers in the secondary market. Am. Compl. ¶ 19. In accordance with this plan, on or about May 3, 2006, two applications were submitted to Lincoln (the "Applications") for life insurance policies in the amounts of $2,500,000.00 and $2,000,000.00 on the life of 85 year-old Ms. Schwarz. Am. Compl. ¶ 20. The Applications identified the Trust, created on March 16, 2005, located at 124 East 4th Street, Lakewood, New Jersey 08701, as the proposed owner and sole beneficiary of the proposed policies. Am. Compl. ¶¶ 22, 23.

On or about June 23, 2006, in reliance upon the representations on the Application that had been certified as true by the Applicants, Lincoln issued life insurance policy number JP5545877, with a total death benefit of $2,500,000.00 on the life of Ms. Schwarz to the Trust in Lakewood, New Jersey. Am. Compl. ¶ 31. Similarly, on or about June 26, 2006, in reliance upon the representations on the Application that were certified as true by the Applicants, Lincoln

3

issued life insurance policy number JP5549328, with a total death benefit of $2,000,000.00 on

the life of Ms. Schwarz to the Trust in Lakewood, New Jersey.  Am. Compl. ¶ 33.

On February 12, 2009, Ms. Schwarz died at the age of 87.  Am. Compl. ¶ 37.

Approximately one month later, a claim for the death benefits under the Policies was submitted

to Lincoln by the Trust.  Am. Compl. ¶ 38.  Following Ms. Schwarz's death and the submission

of a claim for the death benefit under the Policies, Lincoln commenced a routine death claim

investigation (the "Claim Investigation").  Am. Compl. ¶ 39.  The Claim Investigation revealed

that the submission of the Applications and the Policies that resulted were part of a conspiracy

and collaborative effort by the Applicants and/or those acting on their behalf or in concert with

them, and other entities engaged in STOLI transactions to profit, at Lincoln's expense, from a

gamble upon the life of Ms. Schwarz.  Am. Compl. ¶ 40.  In furtherance of the fraudulent

scheme, the Applicants and/or those acting on their behalf or in concert with them falsely,

knowingly and intentionally made fraudulent and material misrepresentations and/or omissions

to Lincoln concerning, *inter alia*, Ms. Schwarz's finances, the existence of other life insurance

and/or applications, and the true purpose behind the procurement of the Policies.  Am. Compl.

¶ 42.

For example, the Applicants made fraudulent and material misrepresentations and/or

omissions that Ms. Schwarz owned assets and/or had a net worth totaling $10,300,000.00 and an

annual earned income of $433,000.00, when, in actuality, she lived with her son, Ernst Schwarz,

for the past fifty-five years in a housing project developed by the New York Housing and

Development Administration for persons or families of low income.  Am. Compl. ¶¶ 44-45.  The

Applicants also misrepresented the application for and acceptance of additional insurance and the

purpose of the Policies.  Am. Compl. ¶ 48-50.  Furthermore, the Applicants understood that the

4

premiums due would not be paid by Ms. Schwarz; but instead, they expected that the premiums due under the Policies would be advanced and/or financed by a third party. Am. Compl. ¶ 52. As such, the Policies were purchased as part of a fraudulent STOLI transaction and lacked the requisite insurable interest.

## IV.   Standard of Review Under Rule 12(b)(6)

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir. 1997). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."

*Iqbal*, 129 S. Ct. at 1950. Therefore, "a court considering a motion to dismiss can choose to

begin by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's

entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578

F.3d at 211.

**V.     Argument**[1]

    A.     Defendants Have Failed to Sufficiently Plead that Lincoln Breached the
           Insurance Contract

      In Count I of the counterclaims, Defendants assert a breach of contract claim against

Lincoln. Defendants allege that Lincoln has "breached its contractual duty to the Trust" because

"Lincoln has refused to pay the Trust's claim." Counterclaim at ¶¶ 140-141. This, however, is a

legal conclusion wholly unsupported by factual allegations, and should be dismissed because

Defendants fail to establish the basic elements of a breach of contract claim.

      In order to bring a claim for breach of contract, a plaintiff has the burden to show that: (1)

a valid contract existed between the parties; (2) the defendant breached the contract; (3) plaintiff

performed its obligations under the contract; and (4) plaintiff incurred damages as a result of the

breach. *Reddy v. MedQuist, Inc.*, 2009 WL 250050, at *2 (D.N.J. Jan. 29, 2009; *Coastal

Aviation, Inc. v. Commander Aircraft Co.,* 937 F. Supp. 1051, 1060 (S.D.N.Y. 1996) (holding

that, under New York law, the elements of a claim for breach of contract are (1) the existence of

---

[1]    It should be noted, as a preliminary matter, that Lincoln maintains that New Jersey law governs this
dispute, but that a choice of law analysis is premature and unnecessary at this stage of the litigation. *See
Lincoln Nat. Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d. 882, 890 (D.N.J. 2009).

a contract; (2) due performance of the contract by plaintiff; (3) breach of the contract by defendant; and (4) damages resulting from the breach).

Defendants have failed to plead facts to support the second element of a breach of contract claim. Lincoln has not breached any contractual obligation imposed by the Policies. Rather, Lincoln has brought a declaratory judgment action seeking a determination of its rights and obligations, as permitted under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201. Lincoln has not refused to pay proceeds of the Policies, but rather has sought judicial intervention to assess the validity of the contracts. If Lincoln does not prevail in this action, Lincoln will pay the death benefit on the life of Valeria Schwarz, as instructed by the Court. The Trust has not alleged a single fact upon which the Court could conclude that Lincoln would refuse to pay the death benefits, if the Policies are ultimately declared valid. Nor is the Trust entitled to such an inference. Lincoln has not breached any obligation imposed by the contracts in bringing this declaratory judgment action.

In fact, numerous courts have held that bringing an action for declaratory judgment is not a breach of contract, but rather an attempt to properly honor the contract. *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 566 (D. Del. 2009) (holding that bringing a declaratory judgment action is not a refusal to comply with contractual obligations, but rather an attempt to carry them out); *see also Babb v. Superior Court,* 479 P.2d 379, 383 (Cal. 1971) (stating that a declaratory judgment action "serves to set controversies at rest before they lead to repudiation of obligations"); *Principal Life Ins. Co. v. DeRose,* 2009 WL 4061366, at *7 (M.D. Pa. Nov. 23, 2009) (observing that "the fact that [the plaintiff] has followed lawful process by filing a complaint seeking declaratory relief in federal court is insufficient to state a claim for anticipatory repudiation for the simple reason that by bringing a declaratory action, [the

7

plaintiff] is seeking a legal declaration regarding its rights and obligations under the policies");

*AXA Corporate Solutions v. Underwriters Reinsurance Co.,* 2004 WL 2534386, at \*19 (N.D. Ill.

Nov. 9, 2004) (noting that a declaratory judgment action "was not an attempt by [the plaintiff] to

walk away from its contractual obligations" as a declaratory judgment action is the "antithesis of

the definition of anticipatory breach").

The most that can be said of Lincoln's declaratory judgment action is that Lincoln has

indicated it will not pay the death benefits, *if the Policy are declared invalid*. In that event, there

can be no breach of the contract because the first element of a breach of contract claim (*i.e.*, the

existence of a valid contract) would be lacking. As such, there are no set of facts that can

establish that Lincoln has breached an obligation imposed by the Policies and Count I should be

dismissed.

B.      Defendants Have Failed to Sufficiently Plead That Lincoln Committed Fraud or Acted in Bad Faith

Defendants have failed to set forth any factual allegations to support their claim that

Lincoln engaged in fraud and/or bad faith in connection with the Policies. Defendants meager

four-paragraph fraud/bad faith claim fails to satisfy the minimum pleading requirements imposed

by *Twombly* and *Iqbal*, the heightened pleading requirements of Rule 9(b), and the requisite

elements required to support either claim.

1.      Defendants Have Failed to State a Claim Against Lincoln for Fraud

Defendants' fraud claim is based solely upon conclusory allegations that Lincoln engaged

in perfidious conduct in order to benefit itself. Counterclaim ¶ 15-18. More specifically,

Defendants claim that Lincoln "fraudulently engaged in this transactions solely so that it may

keep the premiums paid and not provide any benefit to anyone." Counterclaim ¶ 16. The only

other suggestion of fraudulent conduct made in the counterclaim is that "[a]s a result of

plaintiff's fraudulent conduct, defendant has been damaged in an amount to be specified at trial." Counterclaim ¶ 18. However, there are no allegations of fact anywhere in the counterclaim that support these accusations. These are merely "bald assertions" and "legal conclusions" that need not be considered by the Court. *In re Burlington,* 114 F.3d at 1429-30 (3d Cir. 1997). Thus, Defendants' cause of action for fraud fails to meet even the basic minimum pleading requirements of Rule 8 as applied by the Supreme Court in *Twombly* and *Iqbal*.

The allegations of fraud also fail to satisfy the heightened pleading requirements of Rule 9(b). It is not enough to merely allege the elements of fraud in the counterclaim, which the Defendants have even failed to do in this case. Rule 9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Fraud and mistake must be pled with particularity sufficient to "place the Defendants on notice of the precise misconduct with which they are charged, and to safeguard Defendants against spurious charges of immoral and fraudulent behavior." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *see also In re Burlington*, 114 F.3d at 1418 (3d Cir. 1997) ("Rule 9(b)'s heightened pleading standard gives Defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements"). The party alleging fraud "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009) (emphasis added). Moreover, the mere non-performance of an agreement is not evidence of fraud. *See Mallon v. Prudential Property & Casualty Ins. Co.*, 688 F. Supp. 997, 1009 (D.N.J. 1988).

The counterclaim for fraud fails to make any factual allegations and, therefore, cannot meet the heightened pleading standard imposed by Rule 9(b). For example, Defendants do not plead or allege the date, time and place of the alleged fraud nor any fact which would inject precision or substantiation of its fraud claim. Accordingly, this claim should be dismissed.

The general elements of a fraud claim are the same in New Jersey and New York. *See Shapiro v. Barnea*, 2006 WL 3780647, at *3 (D.N.J. Dec. 21, 2006) ("The Court notes that the general elements of fraud claims are the same in New York and New Jersey"); *see also Gallerstein v. Berkshire Life Ins. Co. of America*, 2006 WL 2594862, at *5 (D.N.J. Sept. 11, 2006). However, New York law "preclude[s] fraud actions where the only fraud charged relates to a breach of contract," as is the case here. *Lomaglio Assoc., Inc., v. LBK Mktg. Corp.,* 892 F. Supp. 89, 94 (S.D.N.Y. 1995).

Under New Jersey law, to sustain a claim for fraud a plaintiff must establish: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525 (D.N.J. 2008). Similarly, under New York law, the elements of a cause of action for fraud, not based upon the breach of a contract, require "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009).

The counterclaim does not allege that Lincoln made any material misrepresentations. As such, Defendants cannot show that Lincoln had knowledge of the unidentified misrepresentation, an intention for the Defendants to rely upon the unidentified misrepresentation, reasonable reliance, or damages from the misrepresentation. The Trust has simply made bald assertions of

10

fraud against Lincoln which fail to satisfy the minimum pleadings requirements of Rule 8, the heightened pleading standard of Rule 9(b), or the elements of fraud under New Jersey or New York law. Therefore, the counterclaim for fraud should be dismissed.

2.    Defendants Have Failed to State a Claim Against Lincoln for Bad Faith

Defendants' counterclaim for bad faith should be dismissed because it has not, and cannot, meet the pleadings requirement of Rule 8. The counterclaim merely states that "Plaintiff engaged in bad faith by entering into this transaction solely so that it may keep the premiums paid and not provide any benefit to anyone and by bringing this action without any factual basis as to the allegations." Counterclaim ¶ 17. This allegation is simply a "bald assertion" and "legal conclusion" and certainly does not "raise a right to relief above the speculative level." *In re Burlington,* 114 F.3d at 1429-30 (3d Cir. 1997); *Twombly,* 550 U.S. 544, 546 (2007). Defendants fail to make any factual allegations to support its claim that Lincoln entered into this transaction solely to keep premiums or that Lincoln had no basis for bringing this action.

The bad faith claim should also be dismissed because, as a matter of law, Lincoln has a right to bring a declaratory judgment action seeking the court's assistance in determining the parties' rights and obligations under the Policies. *See* 28 U.S.C. § 2201. It is entirely proper to invoke the jurisdiction of the courts on a question of actual controversy, and doing so certainly does not constitute bad faith. *Cay Divers, Inc. v. Raven,* 812 F.2d 866, 871 (3d Cir. 1987) (holding that an insurer's seeking of a declaratory judgment does not support a charge of bad faith); *see Rite Aid Corp. v. Liberty Mutual Fire Insurance Co.*, 414 F. Supp. 2d 508, 522 (M.D. Pa. 2005) (holding that the initiation of the declaratory action filed by the insurer "does not, by itself, indicate bad faith"); *Victoria Ins. Co. v. Li He Ren*, 2008 WL 2371850, at \*3 (E.D. Pa. June 9, 2008) (finding "as a matter of law, the Defendants have failed to state a bad faith claim

11

upon which relief may be granted as the only conduct that they allege as being in bad faith; *i.e.*, the initiation of this declaratory judgment action and the assertion of a meritless coverage defense, is nothing more than the litigation of legitimate coverage issues"); *Little Souls Inc. v. State Auto Mutual Ins. Co.*, 2004 WL 503538, at *4 (E.D. Pa. 2004) (stating that "the filing of a declaratory judgment alone cannot sustain an action for bad faith").  Quite to the contrary, seeking declaratory relief is the preferred method of resolving disputes in these circumstances. *See Allstate Indemnity Co. v. Murphy*, 2008 WL 4415580, at *4 (M.D. Pa. Sept. 25, 2008) (stating that an insurer is entitled to seek a declaratory judgment regarding insurance coverage and "these declaratory judgment actions are preferable to the insurers denying coverage"); *see also Allstate Ins. Co. v. Kenney*, 2003 WL 22345683, at *3 n. 6 (E.D. Pa. Oct. 8, 2003) (dismissing a counterclaim for bad faith against the plaintiff insurer and stating that "it is better for an insurance company to seek a declaratory judgment regarding its obligations under an insurance contract than for the insurance company to simply deny benefits to the insured").

Defendants' failure to sufficiently plead its bad faith counterclaim has not put Lincoln on notice of any legal or factual basis for its alleged bad faith.  Nevertheless, Lincoln can show that its treatment of the Policies was not in bad faith.  Under New Jersey law, to establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a "fairly debatable" reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim.  *Pickett v. Lloyds,* 621 A.2d 445, 454 (N.J. 1993); *Ketzner v. John Hancock Mut. Life Ins. Co.*, 2004 WL 2913945, at *4 (3d Cir. Dec. 17, 2004).  "Under New York law, an independent tort action for bad faith denial of coverage is not recognized." *Wiener v. Unumprovident Corporation,* 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002); *see New York University v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y.

12

1995) (discussing the unavailability of a tort remedy in the absence of a duty apart from contractual obligations and dismissing bad faith claim in the absence of an underlying tort).

Under New Jersey law, a claim is "fairly debatable" where there is a question of fact as to whether or not the claim determination is correct. "[A] question of fact permits an insurer to 'fairly debate' an insured's claim." *Tarsio v. The Provident Insurance Company*, 108 F. Supp. 2d 397, 401 (D.N.J. 2000). In the case of a processing delay, bad faith is established by showing that no "valid reasons" existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay. *Pickett*, 621 A.2d at 457-58 (N.J. 1993).

Here, Lincoln has not denied Defendants the Policies' benefits and has clearly indicated that if it does not prevail in this action, it will pay the death benefit on the life of Valeria Schwarz, as instructed by the Court. However, assuming *arguendo* that Lincoln's filing of a declaratory judgment constitutes a denial of benefits, Lincoln had a "reasonably debatable" basis for challenging Defendants' claim for benefits under the Policies; namely, the Policies lack of insurable interest and the extensive fraud on the part of the Defendants in connection with the Applications for the Policies. Similarly, assuming *arguendo* that Lincoln's filing of a declaratory judgment constitutes a processing delay, it is clear that Lincoln had "valid reasons" for the delay; namely, the Policies lack of insurable interest and the extensive fraud on the part of the Defendants in connection with the Applications for the Policies. Indeed, the Court has already found that Lincoln had a "reasonably debatable" and/or "valid reason" for seeking a declaratory judgment that the Policies were void *ab initio* and/or for fraud by denying the Trust's motion to dismiss Lincoln's claims. Given that Defendants have failed to plead any facts in support of their bad faith claim, and that Lincoln has, at a minimum, a reasonably debatable

13

and/or valid reason to invoke its right to seek the assistance of the Court in filing this declaratory judgment action, Defendants' counterclaim for bad faith should be dismissed.

      C.      Defendants Fail to Establish the Requisite Elements of a Cause of Action Under New York General Business Law Section 349

Lincoln maintains that New York General Business Law Section 349 is inapplicable because New Jersey law applies to this action. Additionally, Section 349 does not apply to Defendants Yoel Schwarz and Ernst Schwarz, as trustees of the Valeria Schwarz Irrevocable Life Insurance Trust, since all correspondence with the Trust were sent to and received by the Trust in Lakewood, New Jersey, the situs of the Trust. Assuming *arguendo* that Section 349 applies, Defendants fail to establish any of the threshold elements required to state a viable claim. In order to state a viable claim under Section 349, a party must establish three elements: "first, that the challenged act or practice was consumer oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000). Since Defendants cannot establish that any act on the part of Lincoln was "consumer-oriented," or that any act of Lincoln misled Defendants in a material way, Defendants' purported Section 349 claim must be dismissed.

      1.      Defendants' Claim is Entirely Devoid of Any Meaningful Allegation of Consumer-Related Conduct on the Part of Lincoln

Defendants fail to establish the first element of a Section 349 claim because the acts they are challenging are in no way "consumer related." The alleged acts of Lincoln, which purportedly give rise to Defendants' claim, are no more than a manifestation of a contract dispute between two private parties and, as such, are not actionable under Section 349.

To meet the first element of a valid claim under Section 349, a claimant must, at the outset, "charge conduct of the defendant that is consumer oriented." *Oswego Laborers' Local 14*

14

*Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995). The New York Court of Appeals has held that, for conduct to be adjudged "consumer oriented," the acts or practices at issue "must have a broad impact on consumers at large." *New York University v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995). It follows that "[p]rivate contract disputes, unique to the parties…would not fall within the ambit of the statute." *Oswego*, 85 N.Y.2d at 25.

The requirement that the practices complained of must amount to more than a private contract dispute between the parties is particularly relevant in the context of insurance, as it has become increasingly common for insureds to attempt to masquerade simple coverage disputes as Section 349 claims. These attempts have been soundly rejected by the courts. As noted by the court in *DePasquale v. Allstate Ins. Co.*, "[s]everal courts have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within Section 349. Almost uniformly, those courts have held that such disputes are nothing more than private contract disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." 179 F. Supp. 2d 51, 62 (E.D.N.Y. 2002) (emphasis added); *Security Mut. Life Ins. Co. of New York v. DiPasquale*, 724 N.Y.S.2d 594 (N.Y. App. Div. 2001) (affirming the dismissal of a Section 349 counterclaim, on the basis that the case was no more than a private contract dispute, its facts centered upon a "decision as to coverage, made on the basis of facts concerning [a] particular insured"); *see also Korn v. First UNUM Life Ins. Co.*, 717 N.Y.S.2d 606 (N.Y. App. Div. 2000); *Fekete v. GA Ins. Co. of New York*, 719 N.Y.S.2d 52 (N.Y. App. Div. 2001).

Defendants' ill-conceived attempt to convert Lincoln's claim investigation, discovery of the Defendants' fraudulent STOLI scheme, and the filing of a declaratory judgment action into a violation of Section 349 fails because it does not allege facts sufficient to demonstrate any broad

15

consumer impact. Defendants' assertion that "Plaintiff has engaged in a broad practice of issuing policies for the purpose of keeping premiums without providing any insurance coverage" is completely unsupported by any factual allegations in the counterclaim. Additionally, Lincoln's actions were a direct result of the Defendants' particular fraudulent conduct. Lincoln's unraveling of Defendants' STOLI scheme and challenge to the validity of the Policies is clearly a fact-specific and individualized contract dispute between the parties. It does not have the broad impact on consumers required for a Section 349 claim.

Additionally, Defendants' allegation that Lincoln issues life insurance policies "for the purpose of keeping premiums without providing any insurance coverage" is nonsensical.[2] It would be an absurd business plan for a life insurer to *sotto voce* encourage the sale of life insurance policies only to turn around and, at great cost, seek to rescind or void them, unsure as to whether and to what extent the court will permit the insurer to rescind or void the policies and/or retain premium.

This life insurance contract dispute is precisely the sort of "private contract dispute" that the *Oswego* court held could not form the basis of a Section 349 claim. The seven paragraph counterclaim for violation of Section 349 does not allege any facts or identify any specific practice of Lincoln to support its claim. Defendants' attempt to convert a garden-variety coverage dispute into a consumer practices claim, by stating that it is a "broad practice," fails to state a plausible claim for a violation of Section 349. *Lava Trading Inc. v. Hartford Fire Ins.*

---

[2]      Courts need not credit irrational allegations. *E.g.*, *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (complaint is baseless if "the facts alleged rise to the level of irrational"); *Richardson v. Division of High Schools of New York City Bd. of Educ.*, 1990 WL 124346 at *5 (S.D.N.Y. Aug. 24, 1990) (case dismissed where plaintiff made "irrational and unsupported allegations").

*Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) (granting motion to dismiss a Section 349 claim, holding that "conclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under Section 349 in the absence of factual allegations in support thereof"). Since sweeping, factually unsupported claims of "broad practice[s]" are insufficient to support a Section 349 claim, Defendants' claim must be dismissed.

> ### 2. Defendants' Claim Fails to Set Forth Any Deceptive Act or Practice on the Part of Lincoln

Defendants' purported Section 349 claim also fails because it does not contain facts sufficient to demonstrate that Defendants were deceived by any act or practice on the part of Lincoln. To meet the second element of a Section 349 claim, a claimant must allege facts sufficient to demonstrate that the challenged act or practice was "misleading in a material way." *Stutman*, 95 N.Y.2d at 29. "Whether a representation or omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* General accusations of wrongdoing are insufficient. Rather, a claimant must "allege with (some specificity the allegedly deceptive acts or practices that form the basis for the claim)." *Lava Trading*, 326 F. Supp. 2d at 438.

Given these standards, it is clear that Defendants' counterclaim fails to meet the "deceptive acts" threshold for a Section 349 claim. As noted above, Defendants base their purported Section 349 claim on the bald assertion that Lincoln "engaged in a broad practice of issuing policies for the purpose of keeping premiums without providing any insurance coverage." Counterclaim ¶ 23. But nowhere in Defendants' seven-paragraph counterclaim do they identify any act, much less a specific act, by Lincoln that was misleading or deceptive in

17

any respect. As such, Defendants are also unable to show that they have been damaged by any deceptive act of Lincoln.

Finally, the rationale proposed by Defendants nullifies the intent of Section 349. Defendants propose that any claim investigation that does not result in the payment of benefits under an insurance policy is actionable under Section 349. This rationale is illogical and violates the intent of the statute. Since Defendants have failed to allege any deceptive acts or practices to support their Section 349 claim, Count III should be dismissed.

## VI. Conclusion

For the foregoing reasons, it is respectfully requested that the counterclaims of Defendants Yoel Schwarz and Ernst Schwarz, as Trustees of the Valeria Schwarz Irrevocable Life Insurance Trust be dismissed with prejudice.

Dated: November 24, 2010

James S. Bainbridge (02083-1998)
Lawrence R. Scheetz, Jr. (01864-2007)
**DRINKER BIDDLE & REATH LLP**
105 College Road East
Princeton, NJ 08542-0627
(609) 716-6500 (telephone)
(609) 799-7000 (facsimile)
lawrence.scheetz@dbr.com

*Attorneys for Plaintiff*
*The Lincoln Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November, 2010, I caused a true and correct copy

of Plaintiff The Lincoln National Life Insurance Company's Memorandum of Law in Support of

Its Motion to Dismiss the Counterclaims of Defendants Yoel Schwarz and Ernst Schwarz, as

Trustees of the Valeria Schwarz Irrevocable Life Insurance Trust to be filed with the CM/ECF

system which sent notice of such filing to:

> David BenHaim, Esquire
> SCHINDEL, FARMAN & LIPSIUS LLP
> 4 Cornwall Drive
> Suite 101
> East Brunswick, NJ  08816
> (732) 390-0166
> dbenhaim@sfl-legal.com
>
> *Attorneys for Defendants*
> *Yoel Schwarz and Ernst Schwarz, as Trustees of the*
> *Valeria Schwarz Irrevocable Life Insurance Trust*

Lawrence R. Scheetz, Jr.