David BenHaim (DB 9810)
SCHINDEL, FARMAN, LIPSIUS, GARDNER & RABINOVICH LLP
4 Cornwall Drive, Suite 101
East Brunswick, NJ 08816
732-390-0166

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § § | CIVIL ACTION NO. 3:09 cv 03361- SCR |
| -against- | § § § | |
| YOEL SCHWARZ and ERNEST SCHWARZ, As Trustees of the Valeria Schwarz Irrevocable Life Insurance Trust, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS THE COUNTER-CLAIMS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ......................................................................... 1

FACTS .................................................................................................................. 2

ARGUMENT ........................................................................................................ 4

    I.    LINCOLN BREACHED THE INSURANCE CONTRACT ......................... 4

    II.   COUNTER-CLAIM PROPERLY ALLEGES FRAUD AGAINST LINCOLN............. 5

    III.  LINCOLN VIOLATED NEW YORK GENERAL BUSINESS   OBLIGATIONS LAW § 349 ...................................................................... 8

    IV.  LINCOLN HAS COMMITED BAD FAITH IN DENYING THE CLAIM FOR BENEFITS ...................................................... 10

CONCLUSION.................................................................................................... 10

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust,*
2010 WL 5253611 (D.N.J. 2010) .................................................................................. 7, 10

*American General Life Insurance Company v. Sussex*
*130 LLP*, 2:09-cv-05097-FSH -PS ...................................................................................... 7

*Andre Strishak & Associates, P.C. v. Hewlett Packard Co.,*
300 A.D.2d 608, 752 N.Y.S.2d 400 (2nd Dept. 2002) ....................................................... 9

*Anunziatta v. Orkin Exterminating Co., Inc.,*
180 F.Supp.2d 353 (2001) ................................................................................................... 9

*AXA Corporate Solution v. Underwriters Reinsurance Co.,*
2004 WL 2534386 (N.D.Ill.) ............................................................................................... 5

*Babb v. Superior Court,*
3 Cal. 3d 841, 479 P.2d 379 (1971) .................................................................................... 5

*Broder v. MBNA Corp,*
281 A.D.2d 369, 722 N.Y.S.2d 524 (1st Dept 2001) .......................................................... 9

*Catanella and E.F. Hutton and Co., Secur. Litigation,*
583 F. Supp. 1388 (E.D.Pa.1984) ....................................................................................... 7

*Champion Home Builders Co. v. ADT Sec. Services, Inc.,*
179 F.Supp.2d 16 (2001) ..................................................................................................... 9

*Christidis v. First Pennsylvania Mortgage Trust,*
717 F.2d 96 (3rd Cir.1983) ................................................................................................. 6

*Conboy v. AT & T Corp.,*
241 F.3d 242 (2001) ............................................................................................................ 9

*Craftmatic Secur. Litigation v. Kraftsow,*
 890 F.2d 628 (3rd Cir.1989) ............................................................................................... 7

*Lincoln Life and Annuity Co. of New York v. Bernstein,*
24 Misc.3d 1211(A), 890 N.Y.S.2d 369 (Table), 2009 WL 1912468 (Sup. Ct. 2009) ......... 9

*Marcus v. AT & T Corp.,*
138 F.3d 46 (2nd Cir. 1998) ............................................................................................... 9

*Odesser v. Continental Bank,*
676 F.Supp. 1305 (E.D.Pa.1987) ................................................................................ 6, 7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
85 N.Y.2d 20, 647 N.E.2d 741 (1995) ........................................................................ 8

*Principal Life Ins. Co. v. DeRose,*
2009 WL 4061366 (M.D.Pa.) ...................................................................................... 5

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust,*
674 F.Supp.2d 562 (D.Del.2009) ................................................................................ 4

*Seville Industry Machinery Corp. v. Southmost Machinery Corp.,*
742 F.2d 786 (3rd Cir.1984) ........................................................................................ 6

*Shapiro v. UJB Financial Corp.,*
964 F.2d 272 (3rd Cir.1992) ........................................................................................ 6, 7

*Sokolski v. Trans Union Corp.,*
53 F.Supp.2d 307 (1999) .............................................................................................. 9

**Statutes**
New York General Business Law § 349 ........................................................................ 9

**Rules**
Federal Rule of Civil Procedure 12(b)(6) .................................................................... 2

## PRELIMINARY STATEMENT

Yoel Schwarz and Ernest Schwarz, as trustees of the Valeria Schwarz Irrevocable Life Insurance Trust respectfully submit this memorandum of law in partial opposition to the motion by The Lincoln National Life Insurance Company ("Lincoln") to dismiss the four counter-claims: (1) breach of contract; (2) fraud; (3) bad faith and (4) New York General Business Obligations Law § 349. For the reasons set forth below, Defendants oppose the motion.

The allegations in the counter-claim, which must be assumed as true for the purpose of this motion, evidence a clear breach of the insurance contract: Lincoln agreed to pay the Defendants $4.5 million in the event of Valeria Schwarz's death. Valeria Schwarz died while the policy was in force. Lincoln has failed to pay. Defendants have been damaged in the amount of $4.5 million.

Moreover, Lincoln perpetrated a fraud upon the Trust when it issued the policy. At the time Lincoln issued the policies, it was actively pursuing the elderly market and knew or should have known of the grounds that it now claims allow it to rescind the policies but Lincoln issued the policies anyway in order to collect the premiums.  Having been faced with a claim for benefits, Lincoln now alleges misrepresentations concerning the insured's financial condition when in fact, Lincoln never used the insured's financial condition as a condition for underwriting the policy. In fact, Lincoln knew of or should have known of the insured's true financial condition long before the claim for benefits was submitted. Lincoln never considered the insured's financial condition to be material to the risk and is using the alleged misrepresentations as a false pretext to escape its obligations.

These facts also state a claim for relief under the GBL.

## **FACTS**

As this is a motion pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, the facts set forth are based upon the pleadings and proposed second amended answer with counter-claim.

On or about June 23, 2006, Lincoln National Life Insurance Company ("Lincoln") issued insurance policy number JP5545877 (the "877 Policy") insuring the life of Valeria Schwarz for $2.5 million. On or about June 26, 2006, Lincoln issued policy JP5549328 (the "328 Policy") insuring the life of Valeria Schwarz in the amount of $2 million.

Valeria Schwarz passed away of natural causes on February 12, 2009. At the time of Valeria Schwarz's death, the 328 Policy and the 877 Policy were  both in full force and effect. Lincoln is under contractual obligation to pay the Trust $ 4.5 million, plus interest, from the time of Valeria Schwarz's death. Lincoln has not paid and accordingly Lincoln breached its contractual duty to the Trust. The Trust is due $4.5 million plus interest from Lincoln.

At the time Lincoln sold and issued the policies, Lincoln was actively engaged in the business of selling life insurance policies on the lives of elderly individuals without regard to the income or net worth of the insured.  Lincoln sold many such life insurance policies constituting many hundreds of millions of dollars of life insurance. As a result of targeting the elderly market, Lincoln was propelled into the top 10 insurers in market share.

Lincoln was well aware at the time it sold and issued the policies that it was selling life insurance policies on the lives of elderly individuals without regard to the financial condition of the insured, and that this practice was widespread. Lincoln actively and knowingly engaged in the business of selling life insurance on elderly individuals to such life insurance trusts.

Lincoln either viewed this practice as lawful and legitimate, or willfully turned a blind eye to it. Evidence that Lincoln considered STOLI/IOLI as legitimate is the fact that Lincoln created a financial arm which engages in life settlement purchases.  Lincoln accepted premium

payments on such life insurance policies with the hope that the policies would lapse for failure to pay premiums so that Lincoln can keep all of the insurance premiums paid without providing any coverage.

In the event a policy would not lapse within the two year contestability period, Lincoln would challenge the validity of the policies and keep the premiums. In the event an insured would die before the policy became profitable, Lincoln would not pay the benefits and instead challenge the policy and seek to keep the premiums. Defendants were aware that Lincoln, by its conduct, deemed the business of selling such policies to be proper and acceptable. Lincoln encouraged defendants to purchase insurance, not interested in the insured's financial condition.

Lincoln never intended to provide insurance coverage to anyone when it issued this policy. Lincoln fraudulently engaged in this transaction solely so that it may keep the premiums paid and not provide any benefit to anyone. Lincoln has thus committed fraud upon the Trust in inducing it to purchase a policy of insurance and paying premiums upon such policy without the intent of providing any coverage.

## ARGUMENT

### I.   LINCOLN BREACHED THE INSURANCE CONTRACT

Lincoln does not deny that it entered into a contract in which it is obligated to pay defendants $4.5 million in the event of Valeria Schwarz's death and that Valeria Schwarz passed away. Lincoln does not deny that it has not paid defendants the $4.5 million but bizarrely claims that it met its contractual obligation by commencing this action in which it seeks to not only avoid paying defendants anything but also to keep all the premiums paid by the defendants.

Lincoln claims that it "has not breached any obligation imposed by the contracts in bringing this declaratory judgment action." It is respectfully submitted that Lincoln breached its obligations by not paying.

Lincoln cites decision from other jurisdictions for the proposition that it has honored the contracts by bringing a declaratory judgment action. The decisions cited by Lincoln are wholly inapposite because in those cases, the insured was still alive thus the insurer's obligations under the contract were not prompted.

In *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F.Supp.2d 562 (D.Del.2009) decided under Delaware law, the insured filed a breach of contract claim against the insurer because the insurer commenced a declaratory judgment action. There, "[t]he Trust does not assert that Principal Life has breached the terms of the Policy" because "it is undisputed that Lawrence Rucker [the insured] remains alive and that no claim for insurance benefits on his life has been submitted."  Instead, it argues that Principal Life's lawsuit constitutes an anticipatory repudiation of the insurance contract between them. The court found that the declaratory judgment action did not amount to anticipatory breach. Here, the insured passed

away and claim for benefits was submitted but Lincoln has failed to pay and refuses to do so. Accordingly, Lincoln breached the terms of the insurance contracts.

Similarly in *Principal Life Ins. Co. v. DeRose*, 2009 WL 4061366 (M.D.Pa.) the court, deciding under Pennsylvania law recommended, "that the Trustee's counterclaim for breach of contract, or for anticipatory repudiation, be dismissed. It is undisputed that JoAnn DeRose remains alive and, accordingly, no claim for insurance benefits on her life has been submitted. There having been no breach, the Trustees rely upon the doctrine of anticipatory repudiation, but have failed adequately to allege facts sufficient to sustain this theory of relief." Implicit in the ruling is that had Joann DeRose passed away and a claim for benefits submitted there would be a breach. Here, defendants are not alleging anticipatory breach. Valeria Schwarz passed away and Lincoln, having failed to pay, breached the terms of the insurance contracts.

The other two decisions cited by Lincoln are entirely irrelevant to this dispute. *Babb v. Superior Court*, 479 P.2d 379 (1971) does not involved a breach of action claim. In *AXA Corporate Solution v. Underwriters Reinsurance Co.*, 2004 WL 2534386 (N.D.Ill.), a dispute between an insurer and a reinsurer concerning the financing of motion pictures, the court allowed the breach of contract claim.

Having failed to pay the benefits due under the policies it issued to defendants, Lincoln breached the only obligation it promised to keep when it issued the policies; to pay upon Mrs. Schwarz' death. Having failed to pay, Lincoln is in breach.

## II.      COUNTER-CLAIM PROPERLY ALLEGES FRAUD AGAINST LINCOLN

The allegations in the counterclaim reveal a scheme by Lincoln to collect millions of dollars from the Trust and similarly situated policy owners without providing anything in return.

Lincoln knew when it issued the policies that the financial condition of Schwarz was not material to the issuance of the policies. It issued the Schwarz policies, hoping that as an elderly individual with limited financial resources, Schwarz would pay a few years in premiums and then the policies would lapse. When Schwarz's claim for benefits became due sooner than Lincoln predicted, Lincoln used the representations made concerning Schwarz's financial condition as a pretext to void the policies and keep the premiums even though it knew or should have known of Schwarz's true financial condition. Lincoln's underwriters ignored Schwarz's true financial condition because it did not increase the risk assumed by Lincoln.

Rule 9(b) requires a claimant to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the claimant acted upon it to his damage. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 284 (3rd Cir.1992). The Court of Appeals for the Third Circuit has held that "Rule 9(b) requires plaintiffs to plead with particularity the ''circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Industry Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3rd Cir.1984).

Despite these requirements, courts should "respect the 'general simplicity and flexibility' of the Federal Rules of Civil Procedure." *Shapiro*, 964 F.2d at 284, quoting *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3rd Cir.1983). Thus, the standard of pleading under Rule 9(b) is a generous one. *Odesser v. Continental Bank*, 676 F. Supp. 1305, 1314 (E.D.Pa.1987).

Focusing exclusively on the particularity requirement is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Craftmatic Secur. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.1989). Instead, under *Seville* the fraud allegations must withstand a case-specific evaluation, made with a view to the policies to be served by Rule 9(b). *Odesser*, 676 F. Supp. at 1314. In addition, "[w]hen the transactions are numerous and take place over an extended period of time, less specificity is required ... [T]he rule should not be applied with such draconian strictness as to undermine the liberal spirit of the Federal Rules of Civil Procedure." In re *Catanella and E.F. Hutton and Co., Secur. Litigation*, 583 F. Supp. 1388, 1398 (E.D.Pa.1984).

Here, all of these elements have been satisfied. Lincoln issued two policies which purported to provide insurance coverage and pay a death benefit. In fact, Lincoln never intended upon providing the death benefit. Lincoln knew that it had no intention of providing that benefit but made the representation in order to induce the Trust to purchase the policies and pay premiums. The Trust actually did.

In re *Craftmatic Sec. Litig.*, 890 F.2d 628 (3rd Cir.1989), the court recognized the difficulty Rule 9(b) places on a claimant alleging corporate fraud:

> Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the [particularity] rule when factual information is peculiarly within the defendant's knowledge or control 890 F.2d at 645 (citations omitted).

Under similar facts, this court recently ruled that policy owners have properly pled fraud against the insurer. *American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust*, 2010 WL 5253611 (D.N.J. 2010); See, also, *American General Life Insurance Company v. Sussex 130 LLP*, 2:09-cv-05097-FSH -PS. In those cases this court allowed the policy owners to proceed

7

with fraud claims against a life insurer that has deceitfully undertaken the same strategy employed here by Lincoln.

Lincoln is not the only insurer to have allegedly engaged in such tactics. Leslie Scism reports in the Wall Street Journal, January 3, 2011, that a similarly situated insurer "targeted old people to buy high-face-value- policies that the insurer knew were likely to be resold to investors in a scheme aimed at generating large commissions and bonuses for its agents and managers." Another similarly situated insurer, "relaxed or disregarded their own underwriting guidelines, disregarded any issues or 'red flags' raised in the underwriting process and did not seek information that they now contend, after the fact, to be material." Investors Sue Insurers Over Death Bets, Wall Street Journal, January 3, 2011, C1-C2. Both of those insurers are facing bad faith and fraud lawsuits. It alleged here that Lincoln behaved in the same manner.

### III.    LINCOLN VIOLATED NEW YORK GENERAL BUSINESS OBLIGATIONS LAW § 349

Lincoln, through its actions, also violated General Business Law § 349. As New York's highest court explained in *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 647 N.E.2d 741 (1995):

> Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior. The statute itself does not require recurring conduct. Moreover, the legislative history makes plain that this law was intended to "afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds" (see, Mem. of Governor Rockefeller, 1970 N.Y.Legis.Ann., at 472-473). Plaintiff, thus, need not show that the defendant committed the complained-of acts repeatedly-either to the same plaintiff or to other consumers-but instead must demonstrate that the acts or practices have a broader impact on consumers at large.

Lincoln's behavior has a broad impact on consumers at large. This was the exact finding in *Lincoln Life and Annuity Co. of New York v. Bernstein*, 24 Misc.3d 1211(A), 890 N.Y.S.2d 369 (Table), 2009 WL 1912468 (Sup. Ct. 2009). In *Bernstein*, the plaintiffs, the same as plaintiff here, commenced a declaratory judgment action to have the policy rescinded and to keep the premiums. The trust counter-claimed a violation of GBL § 349 and the insurer moved to dismiss. The court denied the motion holding:

> A violation of New York's Consumer Protection statute making deceptive acts and practices unlawful requires defendant to mislead the claimant in some material way. *Conboy v. AT & T Corp.*, 241 F.3d 242 (2001). An act is "deceptive" under the statute if it is likely to mislead a reasonable consumer. *Marcus v. AT & T Corp.*, 138 F.3d 46 (1998). The reasonable consumer standard is an objective one and the test to determine if a representation or an omission is a "deceptive act" within the meaning of the statute, lies in whether such act is likely to mislead a reasonable consumer acting reasonably under the circumstances. *Champion Home Builders Co. v. ADT Sec. Services, Inc.*, 179 F.Supp.2d 16 (2001); *Andre Strishak & Associates, P.C. v. Hewlett Packard Co.*, 300 A.D.2d 608, 752 N.Y.S.2d 400 (2nd Dep't 2002). However, the reasonable consumer does not mean the least sophisticated consumer. *Sokolski v. Trans Union Corp.*, 53 F.Supp.2d 307 (1999). Nor can there be a claim for deceptive acts or practices when the allegedly deceptive practice was fully disclosed. *Broder v. MBNA Corp*, 281 A.D.2d 369, 722 N.Y.S.2d 524 (1st Dep't 2001).
>
> In New York law, the issues of whether a representation is material for purposes of a deceptive acts and practices claim, and whether the representation is likely to mislead a reasonable consumer, may be determined as a matter of fact or law. *Anunziatta v. Orkin Exterminating Co., Inc.,* 180 F.Supp.2d 353 (2001). Here, there are a myriad of factual issues that must be resolved through the discovery process.
>
> Defendants have properly alleged that plaintiff's conduct was consumer-oriented. Defendants set forth in their complaint that Lincoln's representations in the policy, were misleading in a material way in that the Trust and its Trustee were led to believe that the Trust's claim for payment under the policy would be investigated and processed in good faith and in a timely manner, and that the benefits would be paid in accordance with the terms of the policy.

Just as Lincoln violated GBL § 349 in Bernstein, it did so here. The trust has paid hundreds of thousands to Lincoln and received nothing in return. Lincoln is seeking to not only

rescind the policy but keep all of the premiums. Thus, Lincoln's deceptive conduct is consumer oriented and has caused the Trust to sustain damages. .

### IV.      LINCOLN HAS COMMITED BAD FAITH IN DENYING THE CLAIM FOR BENEFITS

While there are no controlling decisions, Defendants recognize that should this court follow its own precedent set in *American General Life Ins. Co. v. Ellman Sav. Irrevocable Trust*, 2010 WL 5253611 (D.N.J. 2010) then the counter-claim for bad faith will be denied. In order to preserve this counter-claim, defendants oppose the motion to dismiss the bad faith count.

### CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that this Court deny Lincoln's motion to dismiss the counter-claims and for such other relief as this Court may deem just and proper.

Dated: East Brunswick, New Jersey
       January 3, 2011

                              SCHINDEL, FARMAN, LIPSIUS,
                              GARDNER & RABINOVICH LLP
                              Attorneys for Defendants


                         By: _____
                              David BenHaim (DB
                              4 Cornwall Drive, Suite 101
                              East Brunswick, NJ 08816
                              732-390-0166
                              File No.: 4280.0001

10