**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | ) | |
| THE LINCOLN NATIONAL LIFE | ) | Civil Action No.: 09-03361(FLW) |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | **OPINION** |
| v. | ) | |
| | ) | |
| YOEL SCHWARZ AND ERNST | ) | |
| SCHWARZ AS TRUSTEES OF THE | ) | |
| VALERIA SCHWARZ IRREVOCABLE | ) | |
| LIFE INSURANCE TRUST, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**WOLFSON, United States District Judge:**

After the Court denied a motion to dismiss filed by defendants, Yoel Schwarz and Ernst Schwarz ("Defendants") as trustees of the Valeria Schwarz Irrevocable Life Insurance Trust (the "Trust"), Defendants answered the Amended Complaint asserting substantive defenses and brought counterclaims against Plaintiff Lincoln National Life Insurance Company ("Plaintiff" or "Lincoln"). Specifically, Defendants assert a counterclaim for (1) breach of contract; (2) fraud/bad faith; and (3) violation of the New York General Business Law § 349. In this matter, Plaintiff moves to dismiss these counterclaims. For the reasons set forth below, Plaintiff's motion is granted.

## I.      BACKGROUND

For the purposes of this motion, the Court will construe the parties' pleadings as true. Plaintiff alleges that beginning in approximately May 2006, the Trust and others, executed a plan, scheme, or design to procure insurance on the life of Valeria Schwarz (now deceased) for

1

the benefit of stranger investors.  See Am. Compl., ¶ 2.  According to Plaintiff, it was unware of

Defendants' alleged illegal conduct and thus, Plaintiff issued two life insurance policies (the

"Policies") to insure the life of Ms. Schwarz.  Plaintiff alleges these policies were not sought by

Ms. Schwarz to meet legitimate insurance needs, but rather, constitute illegal wagering contracts.

Id.  As the Court explained in its previous Opinion denying Defendants' motion to dismiss the

Amended Complaint, at the heart of Plaintiff's case is the legality of stranger-owned life

insurance policies, also known as "STOLI" plans.[1]  Plaintiff seeks to void the Policies based on

the fact that they are illegal and fraudulent and that they lack an insurable interest.  Id. at ¶¶ 2-3.

In its Complaint, Plaintiff (1) seeks a declaratory judgment that the Policies lacked an

insurable interest; (2) asserts that Defendants committed common law fraud; and (3) asserts that

Defendants violated the New Jersey Insurance Fraud Act.  Thereafter, Defendants moved to

dismiss the Complaint and the Court denied the motion.  Defendants then answered the

Complaint and asserted three counterclaims against Plaintiff: (1) breach of the insurance

contracts; (2) fraud/bad faith; and (3) violation of the New York General Business Law Section

349.  The allegations of these counts will be discussed more fully below.  In the instant matter,

Plaintiff moves to dismiss these counterclaims.

## II.    DISCUSSION

### A.    Standard of Review

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short

and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and

plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for

judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a).  The purpose of a complaint is

---

[1]     In the Opinion and Order dated August 18, 2010, the Court denied Defendants' motion to dismiss Plaintiff's Amended Complaint.  In that Opinion, the Court fully set forth the controversy in this case.  As such, the Court will refer to that Opinion for pertinent facts.

"to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed. 2004).

In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff "and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court "retired" the language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). Rather, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. The Third Circuit summarized the pleading requirement post-Twombly:

> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element.' This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'

Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that the Twombly standard applies to all motions to dismiss, the Supreme Court recently further clarified the 12(b)(6) standard. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950. Accordingly, "a court considering

3

a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.  In short, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010).  This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. (quoting Ashcroft, 129 S.Ct. at 1953).

### B. Breach of Contract

In Count I of the counterclaims, Defendants assert a breach of contract claim against Plaintiff.  Defendants allege that Lincoln has "breached its contractual duty to the Trust" because "Lincoln has refused to pay the Trust's claim."[2] Defs.' Countercl., ¶¶ 140-41.

In order to plead a breach of contract claim, a plaintiff (or here, Defendant Counterclaimant) has to allege sufficiently the following elements: (1) a valid contract existed between the parties; (2) defendant breached the contract; (3) plaintiff performed its obligations under the contract; and (4) plaintiff incurred damages as a result of the breach.  See Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).  There is no conflict of laws because New York

---

[2]       The Court notes at the outset that Plaintiff claims New Jersey law should govern the parties' dispute since the Trust is located in New Jersey.  Defendants do not argue that New Jersey law should not apply in this case; in fact, Defendants cite to Third Circuit case law in support of their claims.  However, inconsistently, Defendants assert a claim under the New York General Business Law.  Regardless of Defendants' position, the Court need not conduct a choice of law analysis because, as will be discussed below, such an analysis is unnecessary for the purposes of this motion.

requires the same elements under a breach of contract claim.  See Oberstein v. SunPower Corp.,

No. 07-1155, 2010 U.S. Dist. LEXIS 41402, at * 5 (E.D.N.Y. Apr. 28, 2010); Harsco Corp. v.

Segui, 91 F.3d 337, 348 (2d Cir. 1996).

Here, Defendants cannot properly plead the second element - that Plaintiff breached the

insurance policies for failing to pay on the claims.  Plaintiff has brought this declaratory

judgment action seeking a determination of its rights and obligations pursuant to 28 U.S.C. §

2201.  In that regard, Plaintiff has sought judicial intervention to assess the validity of the

Policies.  The Court joins with numerous courts, albeit construing different state laws, which

have held that "an action for declaratory judgment does not indicate an unconditional refusal to

comply with contractual obligations, but rather an attempt to carry them out." Principal Life Ins.

Co. v. Lawrence Rucker 2007 Ins. Trust.,  674 F. Supp. 2d 562, 566 (D. Del. 2009); see Allstate

Ins. Co. v. Kenney, No. 02-2387, 2003 U.S. Dist. LEXIS 18250 (E.D. Pa. Oct. 8, 2003) (finding

that insurance company's suit seeking declaration of the parties' legal rights and obligations was

not an announcement that the insurer would refuse to perform under the policies); see also AXA

Corporate Solutions v. Underwriters Reinsurance Co., No. 02-3016, 2004 U.S. Dist. LEXIS

22609, at *19-20 (N.D. Ill. Nov. 9, 2004); Principal Life Ins. Co. v. DeRose, No. 08-2294, 2009

U.S. Dist. LEXIS 109126 (M.D. Pa. Nov. 23, 2009); Principal Life Ins. Co. v. Minder, No.

08-5899, 2009 U.S. Dist. LEXIS 56568, at *4 (E.D. Pa. Jul. 1, 2009).  While the Court

appreciates Defendants' argument that these cases dealt with anticipatory repudiation rather than

non-performance of a policy, that distinction is not significant here.  Essential to the holdings of

these cases is the reasoning that a breach of contract is based upon the insurer's unequivocal

refusal to perform a contract.  See Lawrence Rucker, 674 F.Supp. 2d at 568; see also

RESTATEMENT (SECOND) OF CONTRACTS § 250 cmt. d (1981) ("Generally, a party acts at

[its] peril if, insisting on what [it] mistakenly believes to be [its] rights, [it] refuses to perform [its] duty . . . Modern procedural devices, such as the declaratory judgment, may be used to mitigate the harsh results that might otherwise result from this rule."). Here, Plaintiff has maintained that it will not refuse to pay on the claims if this Court ultimately determines that the Policies are valid. As such, because Plaintiff has not unequivocally refused to pay Defendants' claims, Plaintiff has not committed a breach. Accordingly, Defendants' breach of contract counterclaim is dismissed.

### C.    Fraud

Count II of Defendants' counterclaim alleges that Plaintiff committed fraud by selling life insurance policies to Defendants with the sole purpose of keeping "the premiums paid and not provid[ing] any benefit to anyone."[1] Defs.' Countercl., ¶ 16. In that regard, Defendants allege that Plaintiff was aware "or could have made [itself] aware, of all the facts surrounding the policies and the insured," and that "Plaintiff was well aware at the time it sold and issued the Policy that it was selling life insurance policies on the lives of elderly individuals without regard to the financial condition of the insured, and that this practice was widespread." Defs.' Answer, pp. 9-10. Moreover, Defendants allege that "Plaintiff encouraged defendants to purchase insurance, not interested in the insured's financial condition." Id. at p. 11. Defendants further allege that Plaintiff "accepted premium payments on such life insurance policies with the hope that the policies would lapse for failure to pay premiums so that Plaintiff can keep all of the insurance premiums paid without providing any coverage." Id. To that end, Plaintiff allegedly

---

[1]    Count II only alleges that "Plaintiff fraudulently engaged in this transaction solely so that it may keep the premiums paid and not provide any benefit to anyone." Defs.' Countercl., ¶ 16. The majority of Defendants' fraud allegations are contained within Defendants' Thirteenth Affirmative Defense. Defs.' Answer, p.10. Because Defendants incorporate their Answer, including the affirmative defenses, into their counterclaims, the Court will refer to those allegations in analyzing the merits of the fraud claim.

allowed Defendants to continue paying the Policies' premiums until a benefit had to be

conferred, at which point Plaintiff attempted to rescind the policy and keep the premiums. Id.

Based on these allegations, Plaintiff contends that Defendants have failed to state a fraud claim

sufficient to meet the strictures of Rule 9(b).

Under New Jersey law, five elements must be pled in order to establish a fraud claim: (1)

a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the

defendant of its falsity; (3) intention that the other party would rely on it; (4) reasonable reliance

by the other party; and (5) resulting damages. Dewey v. Volkswagen AG, 558 F. Supp. 2d 505,

525 (D.N.J. 2008).[2] Importantly, a plaintiff must "state with particularity the circumstances

constituting fraud." Fed. R. Civ. P. 9(b). The heightened standard is intended to "place the

defendants on notice of the precise misconduct with which they are charged, and to safeguard

defendants against spurious charges of immoral and fraudulent behavior." Seville Industrial

Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984). Intent and

knowledge can be alleged generally. Fed. R. Civ. P. 9(b).

As a preliminary matter, Defendants argue that the Court should relax the Rule 9(b)

pleading standard because in cases of corporate fraud, such as this case, a party cannot be

expected to have personal knowledge of the details of corporate internal affairs. Indeed, "courts

have relaxed [Rule 9(b)] when factual information is peculiarly within the [corporation's]

knowledge or control." In re Craftmatic Sec. Litig., 890 F.2d 628, 645 (3d Cir. 1989). However,

even under a relaxed application of Rule 9(b), a party must still allege that factual information

that would support a fraud claim is in the corporation's control and accompany this allegation

with supporting facts. Id. (citing Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540

---

[2]     New York and New Jersey provide for the same five essential elements in determining
common law fraud. See Winslow v. Corporate Express, Inc., 364 N.J. Super. 128 (App. Div.
2003); Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999).

(9th Cir. 1989); MaDonna v. United States, 878 F.2d 62, 66 (2d Cir. 1989); Stern v. Leucadia National Corp., 844 F.2d 997, 1003 (2d Cir.), cert. denied, 488 U.S. 852 (1988); DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1248 (2d Cir. 1987); Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986). Here, Defendants do not allege that any information relevant to their fraud claim is in Lincoln's exclusive control or that such information even exists. See Defs.' Countercl., ¶¶ 14-18. Absent those allegations, Defendants have not asserted a proper basis for this Court to relax the heightened pleading standard. The Court now turns to whether Defendants have satisfied the Rule 9(b) standard.

Relying on American General Life Insurance Co. v. Ellman Savings Irrevocable Trust, No. 08-5364, 2010 WL 5253611, at *1, 5 (D.N.J. Dec. 17, 2010), Defendants argue that their fraud allegations are similar to those made in Ellman. In Ellman, in the context of a STOLI plan, the insured had similarly alleged that an insurance company issued a policy with "no intention of ever honoring the death benefit." Id. at *6. The insured supported its fraud claim with allegations of written communications between insurance employees. Id. at *7. Insured identified the employees by name, as well as the date and content of the communication. Id. In particular, the court there found that these alleged communications indicated that the insurer was well aware that the subject insurance policy was likely a STOLI plan soon after the policy was issued, but elected not to rescind the policy until a benefit had to be conferred on the insured. Id. Based on the specificity of those allegations, the court determined that insured's fraud claim was sufficient under Rule 9(b). Id.

In the case at hand, however, Defendants fail to sufficiently allege fraud. Dissimilar to Ellman, Defendants allege in a general manner that Plaintiff never intended to provide death benefits to anyone in connection with the Policies. Defs.' Countercl., ¶ 16. Defendants also

allege that Ms. Schwarz's financial condition was immaterial to Plaintiff when the Policies in question were issued.  Defs.' Countercl., ¶ 20.  Plaintiff argues that Defendants' pleadings fall woefully short of the Rule 9(b) pleading standards.  The Court agrees.

Defendants do not allege that Plaintiff made a representation of any kind, much less a "material misrepresentation of a presently existing or past fact." <u>Dewey</u>, 558 F. Supp. 2d at 525. In <u>Ellman</u>, the insured alleged that the insurer actually knew of the misrepresentations contained in the policy application, but chose to disregard them until the policy became due. 2010 WL 5253611, at *6.  Specifically, the insured made twenty-six factual allegations in support of that proposition, including that the insurer actively induced the insured to purchase the life insurance policy. Here, Defendants' allegations lack any specifics of the alleged fraud.  For example, Defendants do not allege that Lincoln was aware of the misrepresentations contained in Ms. Schwarz's applications, or that Lincoln knew of Ms. Schwarz's actual financial condition prior to issuing the Policies.  Defendants also do not allege that Lincoln knew prior to its investigation that the Policies were STOLI plans and consciously chose not to take any action with respect to same.  Without any specificity, Defendants have failed to inject sufficient precision into their claim of fraud to put Plaintiff on notice of the exact misconduct with which it is charged as required by Rule 9(b). <u>Maniscalco v. Brother Int'l Corp. (USA)</u>, 627 F. Supp. 2d 494, 500 (D.N.J. 2009).  More importantly, to that end, Defendants must "allege the date, time and place of the alleged fraud . . . or some measure of substantiation into a fraud allegation." <u>Id.</u> Accordingly, Defendants' fraud claim fails to meet Rule 9(b)'s heightened pleading standard. <u>Seville</u>, 742 F.2d at 791.

### D.      Bad Faith

Also in Count II, Defendants assert a bad faith claim that is supported by the same allegations as Defendants' fraud claim.   In a conclusory manner, Defendants allege that "Plaintiff engaged in bad faith by entering into this transaction solely so that it may keep the premiums paid and not provide any benefit to anyone." Defs.' Countercl., ¶ 17.   However, contrary to their fraud claim, Defendants allege that Plaintiff "had no reason whatsoever to believe Schwartz [sic] misrepresented [her] financial condition in the application" and thus have no reason to deny Defendants' claim. Defs.' Answer, p. 11. Plaintiff responds that Defendants' bad faith claim is conclusory, lacks any supporting factual allegations and that "an insurer's seeking of a declaratory judgment on potential coverage... does not support a charge of bad faith." Cay Divers, Inc. v. Raven, 812 F.2d 866, 871 (3d Cir. 1987).   Defendants do not substantively dispute Plaintiff's arguments.

Under New Jersey law, a plaintiff must plead two elements to sufficiently allege bad faith: (1) that insurer lacked a 'fairly debatable' reason for its failure to pay a claim and (2) that insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. Ellman, 2010 WL 5253611, at *7. In an insurance context, a bad claim is based on either "the insurer's failure to investigate an insured's claim for benefits" or an unnecessary processing delay. Id. An insurer can "fairly debate" an insured's clam when a question of fact exists regarding the claim's merits, but this requires "an intensive factual examination." Gallerstein v. Berkshire Life Ins. Co., No. 05-5661, 2006 U.S. Dist. Lexis 64487 (D.N.J. 2006).[3]

---

[3]      "Under New York law, an independent tort action for bad faith denial of coverage is not recognized." Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002). In order to be awarded compensatory or punitive damages in an insurance context, a plaintiff would have to allege an "underlying tort cause of action." Id.  Accordingly, even if New York law were to apply in this case, Defendants would not be able to bring a state law bad faith claim. Id.

Here, Defendants' only bad faith allegation is that "Plaintiff engaged in bad faith by entering into the transaction solely so that it may keep the premiums paid and not provide any benefit to anyone and by bringing this action without any factual basis as to the allegations." Defs.' Countercl., ¶ 17.  Defendants do not allege the elements of a bad faith claim.  Indeed, Defendants do not allege that Lincoln failed to conduct an investigation into the insurance claims or that Lincoln lacked a reason for denying Defendants' claims. This type of pleading is clearly deficient.  Furthermore, Plaintiff has not denied Defendants' claim outright. Rather, Plaintiff is seeking a declaratory judgment invalidating the Policies.  Similar to Defendants' breach of contract claim, Plaintiff's decision to petition this Court for a declaration of its rights and obligations regarding the Policies does not give rise to a bad faith claim. Raven, 812 F.2d at 871 ("In general, an insurer's seeking of a declaratory judgment on potential coverage and on the duty to defend dependent thereon before the trial on the main action does not support a charge of bad faith.").  Thus, Defendants do not sufficiently allege a bad faith claim under New Jersey law.

### E.      New York General Business Law § 349

In Count III, Defendants allege that "Plaintiff willfully and/or knowingly engaged in deceptive and/or unfair insurance practices, in violation of New York General Business Law Section 349." Defs.' Countercl., ¶ 25. Specifically, Defendants allege that "Plaintiff knew that the net worth of an insured is completely immaterial to the issuance of elderly polices," and that "Plaintiff was at all times collecting full premiums on the Plaintiff elderly polices with the intention to keep them and never provide coverage." Id. at ¶¶ 20-21. Defendants also allege that Plaintiff "engaged in a broad practice of issuing policies for the purpose of keeping premiums" without conferring death benefits. Id. at ¶ 23.  Finally, Defendants allege that "Plaintiff encouraged and/or instructed its employees and/or agents to engage in a broad practice of failing

to provide life insurance coverage with full knowledge that said policies were meritorious." Id. at ¶ 24.

In order to sufficiently allege a claim under New York General Business Law § 349, three elements must be pled: (1) the challenged act or practice was consumer-oriented; (2) it was misleading in a material way; and (3) defendants suffered injury as a result of the deceptive act. Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000). The New York Court of Appeals has held that consumer-oriented conduct does not have to be repetitive or recurring, as § 349 is intended "to afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds." Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995). All that is required is the conduct has "a broad impact on consumers at large." New York Univ. v. Cont'l Ins. Co., 662 N.E.2d 763, 770 (N.Y. 1995). Thus, § 349 does not encompass "private contract disputes, unique to the parties." Oswego, 85 N.Y.2d at 25.

Plaintiff argues that as a threshold determination, Defendants' claim fails because the life insurance dispute in question cannot be considered consumer-oriented under § 349.  Rather, Plaintiff submits that the alleged conduct is not consumer-oriented because disputes regarding scope of coverage are private contract disputes lacking the consumer impact necessary to state a claim pursuant to § 349. See DePasquale v. Allstate Ins. Co., 179 F. Supp. 2d 51, 62 (E.D.N.Y. 2002); See, e.g., New York Univ., 662 N.E.2d at 763 (dispute concerning coverage under an employee dishonesty policy); Shapiro v. Berkshire Life Ins. Co., 212 F.3d 121, 126 (2d Cir. 2000) (dispute concerning scope of coverage under disability policy); MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582, 586-87 (E.D.N.Y. 1997) (dispute concerning coverage under disability policy).

In response, Defendants maintain that this case is analogous to <u>Lincoln Life & Annuity Co. of New York v. Bernstein</u>. No. 08-2641, 2009 WL 1912468, at *1 (N.Y. Sup. Ct. June 29, 2009). <u>Bernstein</u> similarly involved an insurance company's attempt to invalidate a STOLI plan. <u>Id.</u>  In determining that a life insurance policy was consumer-oriented, the court held that an insured must allege that "the acts or practices have a broader impact on the consumers at large in that they are direct to consumers or potentially affect similarly situated consumers."  <u>Id.</u> at *6. As the insured there alleged that "the policy issued… was a standard-form policy sold by Lincoln Life to many consumers," the court held that the insured had sufficiently pled that the conduct was consumer-oriented.  <u>Id.</u>

Here, Defendants fail to allege that Plaintiff's conduct has sufficient consumer impact to establish a § 349 claim. As <u>Bernstein</u> found, insurance policies involving STOLI plans may have the requisite consumer impact if they are standard-form policies available to many consumers. <u>Id.</u>  In this case, Defendants do not allege that the instant dispute arose from a standard-form policy, nor do they identify with any sufficiency the broad impact Plaintiff's conduct could have on other consumers.  As pled in its current form, Defendants' claim is a fact specific, private contract dispute, lacking any impact or potential impact on consumers in general.  <u>Oswego</u>, 85 N.Y.2d at 25. Thus, Plaintiff's conduct cannot be construed as consumer-oriented under § 349.

Even if the Court had determined Plaintiff's conduct was consumer-oriented, Defendants do not allege that Plaintiff's conduct is misleading in a material way. <u>Stutman</u>, 95 N.Y.2d at 29. The New York Court of Appeals has held that deceptive practices are "limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." <u>Oswego</u>, 85 N.Y.2d at 26. Generally, deceptive practices include "false advertising, pyramid schemes, deceptive preticketing, misrepresentation of the origin, nature or quality of the product, false testimonial,

deceptive collection efforts against debtors, deceptive practices of insurance companies, and 'bait and switch' operations." Richstone v. Everbank Reverse Mortg. LLC, 910 N.Y.S.2d 408 (Sup. Ct. 2009).  However, there cannot "be a claim for deceptive acts or practices when the allegedly deceptive practice was fully disclosed." Bernstein, 2009 WL 1912468 at *6.

Despite lacking these requirements in their pleadings, Defendants maintain that based on the similarities between their allegations of Plaintiff's misleading conduct and that of the insurer in Bernstein, they have sufficiently alleged that Plaintiff's conduct was materially misleading. Id. Defendants reason that Plaintiff's failure to disclose its intention to invalidate life insurance policies if it discovered inaccurate information on insurance applications closely parallels the insurer's conduct in Bernstein. Id.   However, in Bernstein, the insurer only asked applicants: "Have you been involved in any discussion about the possible sale or assignment of this policy to a life settlement, viatical or other secondary market provider?" Id. at *3. The application did not indicate that the insurer might deny benefits if the policy was found to be a STOLI plan. Id. Importantly, the insurer subsequently denied insured's claim solely on the grounds that "there were material misrepresentations" regarding the policy being a STOLI "of a gravity that allows [Lincoln] to void the insurance contract. Id. at *2. The court held there were "a myriad of factual issues that must be resolved through the discovery process" regarding whether insurer's conduct was misleading. Id.

Here, Defendants' seven-paragraph counterclaim does not identify any act, much less a specific one, by Lincoln that was misleading or deceptive in any manner.  Moreover, Plaintiff is seeking a declaratory judgment denying Defendants' death benefits not only on the grounds that it was a STOLI plan, but also because Defendants provided false financial information on a life insurance policy application; this additional ground for Plaintiff's denial of the Policies

distinguishes this case from <u>Bernstein</u>. Plaintiff fully disclosed to Defendants in unambiguous terms that "false statements or material misrepresentations" could result in the loss of benefits. Am. Compl., ¶¶ 28-29; <u>Id.</u> Ex. A at p. 29; <u>Id.</u> Ex. B at p. 29. The policy itself reads: "I UNDERSTAND that any false statements or material misrepresentations may result in the loss of coverage under the policy." <u>Id.</u> As Plaintiff fully disclosed that it reserved the right to invalidate a policy if false statements were made on an insurance application, Defendants cannot allege that Plaintiff's decision to exercise that right was misleading in a material way. <u>Stutman</u>, 95 N.Y.2d at 29.   Furthermore, Defendants do not allege that a reasonable consumer would be materially misled by Plaintiff's conduct. As Defendants have failed to allege the first two elements of a § 349 claim, it is unnecessary to assess whether Defendants sufficiently alleged the third element of damages.  Accordingly, Defendants' counterclaim pursuant to § 349 is dismissed.

### III.   CONCLUSION

For the aforementioned reasons, the Court grants Plaintiff's motion to dismiss Defendants' counterclaims; counterclaims one and three are dismissed with prejudice. The portion of counterclaim two asserting a fraud claim is dismissed without prejudice, but the portion of the second counterclaim asserting a bad faith claim is dismissed with prejudice. Defendants may move to amend their Answer to assert a fraud counterclaim if they discover facts sufficient to allege such a claim consistent with this Opinion and the case law.

DATED:      June 9, 2011                                          /s/ Freda L. Wolfson
                                                                 Freda L. Wolfson, U.S.D.J.